843 So.2d 309 (2003)
Charles DEMOSS, Appellant,
v.
STATE of Florida, Appellee.
Nos. 1D01-3475, 1D01-3751.
District Court of Appeal of Florida, First District.
March 27, 2003.
Rehearing Denied May 1, 2003.
*311 Nancy A. Daniels, Public Defender and Joel Arnold, Assistant Public Defender, Tallahassee, for Appellant.
Charlie Crist, Attorney General and Janelle Gillaspie, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
HAWKES, J.
Appellant was convicted by a jury of grand theft over $100,000.00. Appellant appeals his conviction, arguing the trial court erred by admitting certain documentary evidence over defense objection; denying judgment of acquittal; and denying Appellant's motion for new trial. The State cross-appealed Appellant's downward departure sentence. We affirm the issues raised by Appellant without discussion. However, we find the trial court erred by imposing a downward departure sentence. Accordingly, we reverse and remand for re-sentencing pursuant to the sentencing guidelines.

I
Appellant was employed as the manager of one of the Tallahassee area Petro Mart stores. As part of his duties, Appellant manually prepared reports detailing all sales and cash transactions at his store. These reports were then compared to a computer generated report detailing daily sales at the store. This information was then entered into a data base. At the end of each month, manual "stick readings" were made to determine the actual inventory of gasoline in each tank at the store. All of this information was kept by Petro Mart for each of its stores at its home office.
When the various reports from the store managed by Appellant were reconciled, it was revealed that significant discrepancies were present between the book inventory of gasoline, based on Appellant's reports, and the amount of gasoline actually present in the underground storage tanks, based on the "stick readings." During the relevant time period, Appellant reported 321,065 gallons of gasoline were sold for a total of $402,328.45. However, the reconciliation indicated 436,895 gallons of gasoline were sold for a total of $550,511.40. This results in a difference of 115,830 gallons of gasoline with a value of $148,182.95.
The sentencing guidelines scoresheet required a minimum state prison sentence of 23.55 months and a maximum sentence of 30 years. The court adjudicated Appellant guilty and sentenced him to one year in county jail with credit for time served (22 days), 29 years of probation to run consecutively with the 1 year county jail sentence, and restitution in the amount of $148,183.00 to be paid at a rate of $425.82 per month. The trial court based this downward departure sentence on a finding that the need for restitution outweighed the need for incarceration.

II
"The primary purpose of sentencing is to punish the offender." § 921.002(1)(b), Fla. Stat. (2001). A defendant's minimum sentence is based on the crime he committed and the points he earned. Accordingly, departures below the lowest permissible sentence established by the Criminal Punishment Code must be articulated in writing and supported by a preponderance of the evidence. See § 921.002(1)(f) & (3), Fla. Stat. (2001). The imposition of a downward departure sentence is a two-part process. See Banks v. State, 732 So.2d 1065, 1067 (Fla.1999). *312 First, the trial court must determine "whether it can depart, i.e., whether there is a valid legal ground and adequate factual support for that ground...." Id. (emphasis in original). Second, the trial court must decide "whether it should depart, i.e., whether departure is indeed the best sentencing option for the defendant...." Id. at 1068 (emphasis in original). The trial court's decision in the first step will be affirmed on appeal if the reason cited is a valid one, and if competent, substantial evidence supports that reason. In the second step, the trial court is afforded considerable discretion and its decision will not be overturned absent an abuse of discretion. See id.
A victim's need for restitution is a valid reason for a downward departure sentence only if competent, substantial evidence shows the victim's need outweighs the need for incarceration. See § 921.0026(2)(e), Fla. Stat. (2001). The test is the victim's need, not the victim's desire or preference. See Banks, 732 So.2d at 1068-1069; State v. Quintanal, 791 So.2d 23 (Fla. 3d DCA 2001). Thus, to satisfy this test there must be some evidence of the victim's need. See Quintanal, 791 So.2d at 24-25 (reversing downward departure sentence where victims lost approximately $200,000.00 and preferred restitution over incarceration, but no evidence was presented as to victims' need for restitution); State v. Schillaci, 767 So.2d 598 (Fla. 4th DCA 2000) (reversing downward departure sentence based on need for restitution outweighing need for incarceration, where defense counsel failed to present any evidence that victims requested restitution or expressed any particular need for restitution.).
In evaluating the need for restitution against the need for incarceration, the trial court must consider "the nature of the victim's loss and the efficacy of restitution, and ... the consequences of imprisonment." Banks at 1069. Merriam-Webster's[1] dictionary defines efficacy as "the power to produce an effect," and restitution as an "act of restoring or a condition of being restored" or in a "legal action serving to cause restoration of a previous state." Id. Thus, when the trial court considers the "efficacy of restitution," as required by Banks, it must evaluate the power of the restitution plan to restore the victim to his or her previous state. This evaluation must include the defendant's ability to pay restitution, and the impact of the restitution plan on the victim. When evaluating the nature of the victim's loss, the trial court must consider the impact of the crime on the victim. If the harm suffered by the victim as a result of the theft was greater than normally expected, and restitution could mitigate that increased harm, then a downward departure sentence may be justified.
However, in this case, the victim is a corporation who averaged in excess of $135,000.00 per month in gasoline sales at the store managed by Appellant, and who operates 18 similar stores in the Tallahassee region. Grand theft of $148,183.00 is always significant. However, there was no evidence that the victim had a pressing need for restitution that would distinguish this case from other grand thefts of this magnitude so as to justify a downward departure sentence. Accordingly, under these facts, the victim suffered no hardship not contemplated by the legislature when it made theft of over $100,000.00 a first degree felony, and established the minimum sentence pursuant to the Criminal Punishment Code. Moreover, Appellant has been ordered to pay almost 20% of his gross payassuming he can duplicate his former salary. The plan requires 29 years *313 of monthly payments in the amount of $425.82 to pay the $148,183.00. Setting aside any concerns of Appellant's financial ability to comply, nominal payments over 29 years does not restore the victim to its former state, especially when the plan was neither requested nor approved by the victim.[2] Although not dispositive, Petro Mart's spokesman expressed a preference for incarceration.

III
Based on the foregoing, we affirm Appellant's conviction for grand theft over $100,000. We reverse the downward departure sentence and remand for re-sentencing pursuant to the sentencing guidelines.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
ALLEN, C.J., and BENTON, J., CONCUR.
NOTES
[1] Merriam-Webster's Collegiate Dictionary 367 (10th ed.2000).
[2] If the victim were to borrow the $148,183 for 29 years, at only 5% interest and make monthly installments to repay the loan the victim would pay $132,788.72 in interest, for a total of $280,971.72.