948 So.2d 12 (2006)
The STATE of Florida, Appellant,
v.
Noe SALGADO, Appellee.
No. 3D05-2656.
District Court of Appeal of Florida, Third District.
November 8, 2006.
Rehearing and Rehearing Denied February 19, 2007.
*13 Charles J. Crist, Jr., Attorney General, and Jill K. Traina, Assistant Attorney General, for appellant.
*14 Christian Dunham, for appellee.
Before RAMIREZ, SUAREZ, and ROTHENBERG, JJ.
Rehearing and Rehearing En Banc Denied February 19, 2007.
ROTHENBERG, Judge.
The State of Florida appeals an order granting the defendant's motion for a downward departure from the sentencing guidelines. We reverse.
The defendant and co-defendant entered a business complex by cutting through barbed wire and fencing with a bolt cutter, which apparently activated an alarm.[1] Upon receiving a call that the alarm had been triggered, the manager of the auto sales business responded to the property and confronted the defendants by shining his flashlight on them and ordering them to "freeze." When the defendants realized that the individual with a flashlight was not a police officer, they disarmed him and beat him with the flashlight. The manager sustained several lacerations to his head and a broken knuckle. During this attack, the defendant forcibly removed the manager's Rolex watch and the co-defendant took the manager's necklace. When the police arrived, the defendant attempted to flee, but was found hiding nearby with the manager's Rolex watch in his pocket. When the defendant was arrested, he gave a taped confession and was charged with burglary using a deadly weapon, three counts of burglary of an unoccupied structure, aggravated battery with a deadly weapon, burglary with assault or battery, and attempted felony murder.
Prior to trial, the defendant indicated that he wished to plead guilty to the charges and filed a motion seeking a downward departure from the sentencing guidelines. In support of his motion, the defendant argued that (1) the offenses were committed in an unsophisticated manner and that this was an isolated incident for which he had shown remorse; and (2) at the time of his arrest, he was too young to appreciate the consequences of the offenses. The defendant was twenty-one years old when he committed these offenses and he had one prior adult arrest for the possession of cocaine and cannabis. Attached to the defendant's motion for downward departure was a psychological evaluation, which was performed to determine whether he was an appropriate candidate for boot camp.
The case was set for November 7, 2005 for report re: plea. On November 7, 2005, prior to hearing any evidence or entertaining argument of counsel, the trial court stated, "I will grant the motion for downward departure and have offered a plea to Mr. Salgado of eight years straight prison, with credit for time served." The State asked to be heard on the defendant's motion for downward departure. In voicing its objection to the plea offered by the court and the downward departure the trial court indicated it intended to impose, the State argued that the defendant had not shown remorse, and in fact he appeared disinterested during his confession, yawning several times. The State also argued that the defendant was not too young to understand the consequences of his offense, that this was not his first contact with the criminal justice system, and that the evidence did not support a finding that the crime was committed in an unsophisticated manner. The State also argued that there were aggravating factors that the court should consider, including that the beating and attempted murder of the victim was done in order to avoid arrest, and that the beating was exceptionally violent.
*15 The trial court allowed the State to call the victim to the stand, who testified as to the circumstance of the attack against him and to his injuries. The photographs showing the victim's injuries were admitted into evidence, and the State proffered that a doctor would have testified at trial that one more blow to the victim's head could have killed him. The defendant took the stand and testified that he was remorseful. Upon the conclusion of the defendant's testimony, the trial court stated, "Mr. Salgado, I will grant your motion for downward departure and offer you, as I assured, eight years in state prison as part of the plea." Based upon the defendant's proffer of evidence, the trial court found the defendant guilty and, over the State's objection, ruled that it was entering a departure sentence, sentencing the defendant to eight years in prison with credit for time served. On November 9, 2005, a sentencing order imposing the downward departure sentence was entered, consistent with the trial court's oral ruling.
A trial court's decision whether to depart downward from the sentencing guidelines is a two-part process. Banks v. State, 732 So.2d 1065, 1067 (Fla.1999). First, the trial court must determine whether there is a valid legal ground for a downward departure and whether there is adequate factual support for the ground for departure. Second, if there is a valid basis for the trial court to permissibly depart, it must determine whether departure is the best sentencing option for the defendant in the pending case. In other words, the first prong is whether the trial court can legally depart and the second prong is whether the trial court should depart. The trial court's determination regarding the first prong is a mixed question of law and fact, which will be sustained on review if the trial court applied the correct rule of law and there is competent substantial evidence to support the ruling; whereas the second prong involves a judgment call within the sound discretion of the trial court, which will be sustained on appellate review absent an abuse of discretion. Id. at 1067-68.
The State argues that the trial court had made up its mind prior to hearing the evidence or considering the aggravating factors, and that neither of the grounds relied upon by the trial court for the downward departure was supported by competent substantial evidence. The two grounds relied upon by the trial court for departure are that (1) the defendant's offenses were committed in an unsophisticated manner and the incident was an isolated incident for which he has shown remorse; and (2) at the time of his arrest, he was too young to appreciate the consequences of his offenses. We will address the latter ground first.
Section 921.0026(2)(k), Florida Statutes (2005), provides that one of the circumstances justifying a downward departure is if "[a]t the time of the offense the defendant was too young to appreciate the consequences of the offense." A defendant's youthful age alone, however, will not justify a departure sentence. There must also be evidence that the defendant is emotionally immature or lacks ordinary intelligence. State v. Gilson, 800 So.2d 727, 730 (Fla. 5th DCA 2001); State v. Licea, 707 So.2d 1155, 1157 (Fla. 2d DCA 1998); State v. Ashley, 549 So.2d 226, 226 (Fla. 3d DCA 1989).
The defendant asserts that the psychological evaluation submitted to the sentencing court provides competent substantial evidence of the defendant's emotional immaturity. The psychological evaluation of the defendant was performed to determine whether the defendant was an appropriate candidate for *16 boot camp, not whether a departure sentence would be appropriate under the circumstances. Although the report states that the defendant is an immature young man, it is conclusory and provides no support or explanation. Further, since the purpose of the evaluation was regarding the appropriateness of boot camp and was not conducted for the purpose of evaluating whether the defendant's maturity level warranted a downward departure, the evaluation did not address whether the defendant's maturity level affected his ability to appreciate the consequences of his actions. In fact, the record is devoid of any evidence which suggests that the defendant lacked the maturity to appreciate the consequences of his actions. Although many cases focus on the youthfulness element of section 921.0026(2)(k), the statute specifically requires that the defendant must also be unable to appreciate the consequences of the offense in order to be eligible for a downward departure sentence. See § 921.0026(2)(k), Fla. Stat. (2005)(allowing for a downward departure when the defendant is "too young to appreciate the consequences of the offense"); State v. Thompson, 754 So.2d 126, 127 (Fla. 5th DCA 2000)(reversing a downward departure sentence, explaining both that the defendant was not youthful and that there was no evidence before the trial court to indicate that he could not appreciate the consequences of his offense). Because there was no evidence in the record that the defendant was too young to appreciate the consequences of his offenses, and in fact the record reflects the contrary, we conclude that the trial court erred in granting a departure sentence based upon section 921.0026(2)(k). The defendant was twenty-one years old when he committed these offenses. The record reflects that he graduated high school, was good in math, was an avid reader, was gainfully employed in a position requiring trust and responsibility, is of average intelligence, has no psychological problems, and comes from a good family with supportive parents. Additionally, the record reflects that the defendant often got in trouble at school and was removed to a school for children with behavioral problems. The evidence does not support a finding that the defendant was too young to appreciate the consequences of his actions.
The other basis that the trial court relied upon when it imposed a departure sentence was that the offenses committed by the defendant were committed in an unsophisticated manner and were isolated incidents for which the defendant has shown remorse. This ground for departure, however, is only valid under section 921.0026(2)(j) when there is substantial competent evidence supporting all three elements. See State v. Subido, 925 So.2d 1052, 1057 (Fla. 5th DCA 2006)("All three elements must exist to justify departure; the offense must have been isolated, committed in an unsophisticated manner, and one for which the defendant had shown remorse."); see also State v. Strawser, 921 So.2d 705, 707 (Fla. 4th DCA 2006); State v. Perez-Gonzalez, 884 So.2d 1031 (Fla. 3d DCA 2004). As the record does not contain competent substantial evidence which would support a finding that the charged offenses were committed in an unsophisticated manner, a departure based upon section 921.0026(2)(j) was unjustified.
Cases generally define "unsophisticated" as the opposite of "sophisticated," which in turn is defined as "having acquired worldly knowledge or refinement; lacking in natural simplicity or naiveté." Staffney v. State, 826 So.2d 509, 512 (Fla. 4th DCA 2002)(citing State v. Fleming, 751 *17 So.2d 620, 621 (Fla. 4th DCA 1999)(quoting American Heritage Dictionary of the English Language (1981))). Thus, a crime is committed in an unsophisticated manner when the acts constituting the crime are "artless, simple and not refined." Staffney, 826 So.2d at 509 (quoting State v. Merritt, 714 So.2d 1153, 1154 n. 3 (Fla. 5th DCA 1998)).
The following cases are instructive. In Staffney, the Fourth District Court of Appeal reversed a downward departure for sexual battery, finding that there was insufficient competent substantial evidence to support the trial court's finding that the crime was committed in an unsophisticated manner where the defendant waited for the victim to fall asleep, and in a stealth-like manner, crept into the victim's bed and took several distinctive and deliberate steps to commit a sexual battery upon her. Staffney, 826 So.2d at 512-13; see also Subido, 925 So.2d at 1058 (rejecting a finding of unsophistication in a case very similar to Staffney). In Perez-Gonzalez, this court likewise held that the record refuted the trial court's finding that the burglary was committed in an unsophisticated manner where the defendant, who, coveted a particular item, broke into the victim's property and made a "surgical strike," taking only that item. Perez-Gonzalez, 884 So.2d at 1032. In State v. Chestnut, 718 So.2d 312 (Fla. 5th DCA 1998), the Fifth District Court of Appeal held that the trial court's finding of unsophistication was not supported by the record where the defendant threw an object at the windshield of the vehicle the victim was driving, in order to stop the vehicle so that he could assault the victim. Id. at 313. The Fifth District, in State v. Morales, 718 So.2d 272 (Fla. 5th DCA 1998), also rejected a finding that the sexual battery against the defendant's ex-wife was committed in an unsophisticated manner, where the defendant gained entry into her residence by deceit. Id. at 274.
The following cases, upholding downward departures based upon the defendant's lack of sophistication, clearly demonstrate artlessness, simplicity, naiveté, and unrefinement. In State v. Joseph, 922 So.2d 393 (Fla. 3d DCA 2006), this court, found that there was competent substantial evidence supporting the trial court's finding that the theft was committed in an unsophisticated manner where the defendant simply retained a duplicate payment from a mortgage company without notifying the company of the over payment. Id.; see also State v. Gilson, 800 So.2d 727 (Fla. 5th DCA 2001)(finding substantial competent evidence that the defendant committed burglary and theft in an unsophisticated manner where the defendant, in order to avoid his angry mother with whom he lived, broke into a neighbor's house to find a place to sleep, threw the neighbor's firearms out of a window, and then was found the next day by the police, asleep in the neighbor's bed); State v. Fleming, 751 So.2d 620 (Fla. 4th DCA 1999)(finding competent substantial evidence to support that the crime of purchasing cannabis was committed in an unsophisticated manner where the defendant knocked on the apartment door where the police were conducting a search of an apartment, asked to speak to a particular person, and after being told that the person he was seeking was not there, purchased drugs from the police).
In the instant case, the defendant and co-defendant entered a business complex in the middle of the night by using a bolt cutter to cut through a barbed wire fence.[2] *18 Once inside the complex, they broke into the shed of an upholstery shop and stole tools, including a crowbar and a blowtorch, which they used to cut through a chain that was securing a door to the body shop they intended to burglarize. After successfully gaining entry into the body shop, they began separately removing radios from cars, which they planned to sell. The defendant and co-defendant broke into six or seven cars before they were interrupted by the victim. Thus, the defendant and co-defendant took several distinctive and deliberate steps in committing the burglary and thefts, which cannot be characterized as being simple, artless, naïve, or unrefined. Rather, their actions demonstrate that they knew what they were doing and were not unsophisticated regarding the burglary and thefts.
The defendant argues that because he broke into a business with an active alarm system, his actions support a finding that he was an unsophisticated burglar and thief. We fail to see the logic in this argument. First, the record does not indicate whether the alarm was an audible or silent alarm. Additionally, sophisticated burglars and thieves steal cars with alarms, break into homes and businesses with alarms, and even steal very valuable paintings from museums which employ very sophisticated alarm systems. In fact, an experienced burglar is generally not deterred by a burglar alarm, since experience demonstrates that it will often take law enforcement time to respond to an alarm. As this is the only factor the defendant argued in support of his claim that the burglary and thefts were committed in an unsophisticated manner, we find that the claim is unsubstantiated by competent substantial evidence.
Regarding the attempted murder of the manager, the defendant argues that since he used the victim's own flashlight to beat the manager, this fact establishes competent substantial evidence that he acted in an unsophisticated manner. We are equally unpersuaded by this argument, as the underlying offenses are burglary and theft and the attack upon the manager when he interrupted the criminal enterprise was an unexpected and unplanned circumstance committed during the course of the defendant's criminal enterprise. We do not agree that the use of the victim's flashlight as the weapon of choice is demonstrative of the defendant's unsophistication. The record reflects that the defendant, when confronted by the victim, did not flee out of fear. Instead, he and the co-defendant disarmed the victim, beat him unmercifully, and robbed him of his watch and necklace. These acts certainly do not support a finding that the crimes were committed by an unsophisticated burglar and thief. The record, in fact, demonstrates the converse. When Salgado was confronted by the victim he began to flee, believing the intruder was a police officer and wishing to avoid the consequences of his criminality. Upon discovering that the intruder was not a member of law enforcement, Salgado made a calculated decision not to abandon the fruits of his criminal labor by fleeing, but instead decided to incapacitate the intruder, rob him as bonus, and flee with the evening's collections. Thus, instead of safely retreating, Salgado calculated the risk, stood his ground, beat the manager until he was fully incapacitated, robbed him of his jewelry, and would have escaped with the loot had law enforcement not arrived when it did.
As neither of the grounds for downward departure articulated by the trial court are supported by competent substantial evidence, and neither the record nor the trial court's order reflect that aggravating factors were considered, we vacate the departure sentence imposed and remand for sentencing before a different judge, where *19 the defendant may elect to either withdraw his plea or be resentenced within the guidelines. See Banks, 732 So.2d at 1068 (explaining that when a trial court determines whether it should depart from the sentencing guidelines, it must weigh the totality of the circumstances, including aggravating factors); State v. Munro, 903 So.2d 381, 383 (Fla. 2d DCA 2005); State v. Evans, 630 So.2d 203 (Fla. 2d DCA 1993).
SUAREZ, J., concurs.
RAMIREZ, J., (dissenting).
I respectfully dissent. We recently stated in State v. Joseph, 922 So.2d 393, 395 (Fla. 3d DCA 2006) that:
Once the trial court has determined that it can depart, the court must further determine if it should depart. In making this determination, the trial court is afforded considerable discretion. The appellate court will only overturn the trial court's decision if there has been an abuse of discretion.
I fail to see how Salgado was more sophisticated when he broke into a business establishment with an active burglar alarm system than the defendant in Joseph, who was an attorney handling a real estate transaction and used his trust account to cash a duplicate check in the amount of $290,098.94. Id. at 394. If Joseph was artless, simplistic, and unrefined, Salgado seems the epitome of unsophistication. While I agree with the majority that the facts would support a finding of sophistication, I cannot agree that the trial court abused its discretion in concluding the opposite, particularly in light of our decision in Joseph.
We should remember the words of Justice Overton in the seminal case of Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980):
We cite with favor the following statement of the test for review of a judge's discretionary power:
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. Delno v. Market Street Railway Company, 124 F.2d 965, 967 (9th Cir.1942). In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the "reasonableness" test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.
The majority apparently concludes that the trial court, after listening to the testimony of the victim and the defendant, was unreasonable in finding that Salgado was an unsophisticated burglar. The majority then discounts the evidence of unsophistication in breaking into a business with an active alarm because sophisticated burglars will even steal "from museums which employ very sophisticated alarm systems." We thus conjure up images of Sean Connery matching wits with Catherine Zeta-Jones in the film "Entrapment." In fact, the majority reasons that "an experienced burglar is generally not deterred by a burglar alarm, since experience demonstrates that it will often take law enforcement *20 time to respond to an alarm." This conclusion is not in the record before this Court, but instead is based on the life experiences of the appellate panel. I cannot agree with our Court substituting its life experiences for that of the trial court where the standard of review is abuse of discretion.
The trial court was the one that heard the testimony and could have reasonably concluded that Salgado broke into an auto body shop without bothering to find out if it even had an alarm system. It could have taken into account that Salgado had not considered the response time of the police to a silent alarm. His lack of concern for such a response time is demonstrated by the fact that he and his accomplice not only had to break through a fence, but also into a shed where they had to obtain a crowbar and blowtorch to then use to cut a chain. A reasonable trial judge could have inferred that, although it may take law enforcement time to respond to an alarm, a sophisticated burglar would also realize that he does not have an unlimited amount of time.
Furthermore, the trial court could have reasoned that using a bolt cutter was an unsophisticated mechanism for gaining entry into a business. I see nothing in the facts to suggest that Salgado had acquired wordly knowledge or refinement. See Staffney v. State, 826 So.2d 509, 512 (Fla. 4th DCA 2002). In short, I cannot conclude that the trial judge was arbitrary, fanciful, or unreasonable.
NOTES
[1] The record does not indicate whether the alarm was audible or silent.
[2] The business complex contained three businesses within one external fence, separated by internal fences.