HAWKES, J.
A jury convicted Dana Adkison of Grand Theft over $100,000.00 and Unlawful Financial Transactions ($20,000.00-$100,000.00). The trial court sentenced her to fifty-six months in prison followed by twenty years of probation. The prison sentence was the minimum sentence permitted based on her Criminal Punishment Code Scoresheet. After exhausting her appellate remedies without success, Adki-son filed a motion seeking a downward departure on the prison portion of her sentence. The circuit court granted the motion. We reverse and find the record is void of any evidence supporting the court’s decision that a downward departure was legally permissible.
Facts
At trial, the State demonstrated Adkison had been involved in a twenty-two month scheme that involved theft of tax payments, “lapping” of deposits and “check kiting.” Adkison used three principle elements in executing her “scheme.” The account at Bank A (her personal account), the account at Bank B (an account opened in the name of her young daughter), and the funds stolen from the Santa Rosa County Tax Collector’s Office (her employer over the twenty-two months).
Adkison would write checks from Bank A to pay bills, debts, and other miscellaneous household expenses. The Bank A account would have insufficient funds to cover the various checks Adkison drew against it. Before the Bank A account could be overdrawn, Adkison would write a check from her Bank B account and deposit it with Bank A. This would satisfy the potential overdraft from the Bank A account, but would leave Bank B with insufficient funds to cover the obligation Adki-son created to cover Bank A. However, before Bank B could discover the overdraft, Adkison would write another check *882 from her Bank A account and use it to satisfy the overdraft in Bank B. Adkison would repeat this process with the amount of money “floating” between the two banks constantly increasing.
The flaw in this and other check kiting schemes is that without infusions of new capital, they fail rapidly. Here, Adkison avoided this problem by depositing thousands of dollars stolen from the Tax Collector’s Office. Over the twenty-two month lifespan of the scheme, Adkison used her position at the Tax Collector’s Office and knowledge as to how the Tax Collector’s system worked to manipulate their internal auditing system so that the stolen funds went undetected. Success required Adkison to carefully plan and track each deposit to prevent the Santa Rosa County Tax Collector from discovering the theft. Adkison also had to constantly monitor her own accounts to avoid her banks discovering her check kiting.
Eventually, she stumbled and a deposit bag was sent to the bank without the funds indicated on the deposit ticket. The bank called the Tax Collector’s Office about the apparent oversight, which triggered an investigation. Adkison gave various explanations for the stolen funds, requested her husband not be told and resigned.
At trial, the State was required to present expert witnesses, numerous spreadsheets and financial records to demonstrate and explain to the jury how the complex scheme operated. The jury found Adkison guilty of Count 1 — Grand Theft over $100,000.00; and, Count 2 — Unlawful Financial Transactions ($20,000.00-$100,000.00).[1] After this Court affirmed the direct appeal of her conviction, Adki-son filed her Motion to Modify Sentence with the circuit court. The judge granted the motion and suspended the prison portion of the sentence. In the final order granting the downward departure, the judge expressly cited the need for restitution to the “citizens of this community,” and the unsophisticated nature of the offense as reasons for departure.
Departure Sentences
A sentence consisting of a suspended prison term followed by a probationary period is treated as a downward departure sentence. See State v. White, 842 So.2d 257 (Fla. 1st DCA 2003). Valid reasons must exist for the downward departure. Id. (citing State v. Powell, 703 So.2d 444, 446 (Fla.1997)).
To impose a valid downward departure sentence, a trial court must determine (1) whether there is a factually supported, legal ground for departure; and (2) whether departure is the best sentencing option for the defendant. See Demoss v. State, 843 So.2d 309, 311-12 (Fla. 1st DCA 2003). When reviewing the validity of a downward departure sentence, this Court must determine whether the grounds for departure were supported by competent substantial evidence; and, whether the trial court abused its discretion in departing from the statutory sentencing guidelines. Id. We do not address whether departure is the best sentencing option for Adkison.
A downward departure from the lowest permissible sentence, as calculated pursuant to section 921.0024, Florida Statutes (2007), is prohibited absent competent substantial evidence that supports cireum- *883 stances or factors that reasonably justify departure under the law. The record fails to support departure on either of the grounds the trial court relied on.
§ 921.0026(2)(e) (Need for Restitution)
Pursuant to section 921.0026(2)(e), the “Need for Restitution” only qualifies as a mitigating circumstance justifying a downward departure when “the need for payment of restitution to the victim outweighs the need for a prison sentence.” See also Demoss v. State, 843 So.2d 309 (Fla. 1st DCA 2003).
To warrant downward departure based on the “need for restitution,” the record must contain competent substantial evidence of the victim’s actual need for restitution. See id. (holding downward departure was inappropriate where the record was void of any evidence indicating the victim had a “pressing need” for restitution); see also State v. Quintanal, 791 So.2d 23, 24-25 (Fla. 3d DCA 2001) (reversing downward departure sentence where victims lost approximately $200,000.00 and preferred restitution over incarceration, but no evidence was presented as to victims’ need for restitution); and see State v. Schillaci, 767 So.2d 598 (Fla. 4th DCA 2000) (reversing downward departure sentence based on need for restitution outweighing need for incarceration, where defense counsel failed to present any evidence that victims requested restitution or expressed any particular need for restitution).
As part of the original sentencing order, the trial court ordered Adkison to pay the Tax Collector $250.00 in restitution (an insurance deductible) and $21,597.00 to Travelers Insurance (the Tax Collector’s insurance provider). The record contains no testimony or evidence about either entity having a “pressing need” for these amounts. Although the judge was “convinced that restitution of the moneys due to the [cjitizens of this community is paramount,” the court had no evidence to assess the citizens of Santa Rosa County’s “pressing need” to recover $250.00, or whether that need outweighed the obligation to impose the punishment Adkison earned under the Criminal Punishment Code Scoresheet the Legislature has statutorily mandated. Thus, a need for restitution cannot justify a downward departure under these facts.
§ 921.0026(2)(j) (Unsophisticated Manner)
Pursuant to section 921.0026(2)(j), the “Unsophisticated Manner” of the crime qualifies as a mitigating circumstance under which a departure from the lowest permissible sentence is reasonably justified if “the offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse.”
The plain language of section 921.0026(2)(j) indicates departure is warranted if three elements are established: (1) The offense must be committed in an unsophisticated manner; (2) The offense constitutes an isolated incident; and (3) The defendant must show remorse. Record evidence must exist to find each of these elements.
Accepting arguendo Adkison showed remorse at the mitigation hearing sufficient to satisfy section 921.0026(2)(j), it remains difficult to understand how the trial court came to the conclusion that the other two elements were supported by the evidence.
We have held that “[A] crime is committed in an unsophisticated manner when the acts constituting the crime are ‘artless, simple and not refined.’ ” State v. Walters, 12 So.3d 298, 301 (Fla. 3d DCA 2009) (quoting Staffney v. State, 826 So.2d 509, *884 512-13 (Fla. 4th DCA 2002)) (emphasis added).
As detailed above, Adkison was involved in a very complex criminal scheme that spanned a twenty-two month period. Over this period, she successfully concealed the theft of over $100,000.00. She not only prevented her employer from discovering the theft, she also successfully kept her various personal banking institutions from discovering her illusory financial status. To do this, she had to (1) carefully time her withdrawals to avoid the suspicion of her various banks’ fraud prevention programs; (2) coordinate deposit dates to disguise insufficient funds; and (3) make special effort to prevent her employer from detecting the thousands of dollars stolen. She was required to constantly monitor each account and track various deposits, perform fraudulent “reversals” and engage in “lapping” deposits to conceal her scheme. But for her sending the wrong bag to the Tax Collector’s bank, Adkison’s scheme would have lasted longer than the twenty-two months it spanned. Such a complex endeavor can hardly be labeled artless, simple or unrefined and any scheme that requires such efforts, over twenty-two months, cannot reasonably be said to be an isolated incident.
Accordingly, because the record does not contain competent substantial evidence that supports the circuit court’s downward departure, based on a need for restitution or the isolated and unsophisticated nature of the offense, we reverse the order modifying Adkison’s original sentence.
REVERSED.
WOLF and WETHERELL, JJ., concur.

. The State was able to prove Adkison had permanently deprived the Tax Collector's office of over $20,000.00 and by use of the expert witnesses and account representatives also proved Adkison, at least temporarily, deprived the Tax Collector’s office of over $100,000.00. Either permanently or temporarily depriving the Tax Collector's Office of the funds qualifies as a violation of Florida's theft statute.