WETHERELL, J.,
concurring in part and dissenting in part.
I concur in the decision to affirm Davis’ conviction, but I respectfully dissent from the decision to affirm Davis’ downward departure sentence under section 921.0026(2)©, Florida Statutes (2011).[3] Accordingly, on the State’s appeal, I would reverse and remand for resentencing in accordance with the Criminal Punishment Code scoresheet, which shows a lowest permissible prison sentence of 44.7 months.
For a downward departure to be valid under section 921.0026(2)©, the trial court must find based upon the preponderance of the evidence that “1) the crime is committed in an unsophisticated manner, 2) it was an isolated incident, and 3) the defendant has shown remorse.” Murphy, 124 So.3d at 331. The trial court’s finding as to each element must be supported by competent substantial evidence. Banks v. State, 732 So.2d 1065, 1067 (Fla.1999). Here, it is undisputed that Davis’ crime was an isolated incident and there is competent substantial evidence to support the trial court’s finding that Davis has shown remorse. Accordingly, the validity of the downward departure in this case turns on whether Davis’ crime was committed in an unsophisticated manner.
A crime is committed in an unsophisticated manner when the acts constituting the crime are “artless, simple and not refined.” Murphy, 124 So.3d at 331 (quoting State v. Walters, 12 So.3d 298, 301 (Fla. 3d DCA 2009)). By contrast, a crime is not committed in an unsophisticated manner when it requires the defendant to take “several distinctive and deliberate steps” to commit the crime. State v. Fureman, - So.3d -, 2014 WL 656756, 39 Fla. L. Weekly D408 (Fla. 5th DCA Feb. 21, 2014) (quoting State v. Salgado, 948 So.2d 12,18 (Fla. 3d DCA 2006)).
Here, the record reflects that Davis undertook a series of distinctive and deliberate steps to commit the charged offense: he engaged in several hours of conversation with an undercover officer posing as a 13-year-old girl and her older sister, both online[4] and on the phone; he evinced a *1235 consciousness of guilt and a desire to conceal the contents of his communications about what he intended to do with the minor by suggesting that they talk in person or on the phone rather than in the online chat;[5] he made unsolicited comments about his sexual prowess and the things that he could “teach” the minor;[6] he drove to Walmart to purchase condoms; and then he drove across town in order to have sex with a minor. These acts, taken together, reflect a level of sophistication that, in my view, precludes a downward departure under section 921.0026(2)(j).
The trial court found that Davis committed the crimes in an unsophisticated manner because he was “naive,” “easily led,” and guided throughout the process by the undercover officers, but the record does not support these findings.[7] Rather, the record reflects that Davis, not the officers, prompted the discussion of sexual matters; that Davis, not the officers, suggested talking in person and on the phone rather than in the online chat; and that, as the trial court found, Davis “knew his conduct wasn’t right” and that he had “every opportunity ... to not follow through” with his actions. Additionally, the trial court erred by focusing more on the actions of the undercover officers than on Davis’ actions. See Fureman, — So.3d -, 39 Fla. L. Weekly D408 (“Here, although the lower court found that Fureman’s acts were unsophisticated because the police initiated the series of events by posting the advertisement, this rationale fails to account for [Fureman]’s actions in completing the crime.”).
I recognize that, in Murphy, this court affirmed a downward departure sentence for a defendant who, like Davis, arranged to have sex with a minor after responding to an online ad posted as part of an undercover sting operation. The defendant in Murphy used his mobile phone to answer the online ad and communicate with the *1236 undercover officers and this court affirmed the trial court’s finding that the crime was committed in an unsophisticated manner because the communication- tools used by the defendant “are so ubiquitous today as to no longer require any level of sophistication to use them.” See 124 So.3d at 332. I do not read Murphy to hold that the use of a mobile phone (or any other “ubiquitous” technological device) is sufficient, standing alone, to establish that the crime was committed in an unsophisticated manner; [8] rather, as I read Murphy, the court simply held that notwithstanding the defendant’s use of his mobile phone, there was evidence to support the trial court’s determination that the crime was committed in an unsophisticated manner. Here, because in my view the evidence does not support the trial court’s finding that Davis’ crimes were committed in an unsophisticated manner, Murphy is distinguishable.
In sum, because the trial court’s finding that Davis’ crimes were committed in an unsophisticated manner is not supported by competent substantial evidence, the trial court erred in imposing a downward departure sentence under section 921.0026(2)(j). Accordingly, we should reverse Davis’ sentence and remand for re-sentencing in accordance with the Criminal Punishment Code scoresheet.

. I agree with majority that section 921.0026(2)(f) ⅛ not a valid basis for a downward departure under the circumstances of this case. See State v. Murphy, 124 So.3d 323, 331 (Fla. 1st DCA 2013) (holding that section 921.0026(2X0 is not applicable when the victim alleged to be the “initiator, willing participant, aggressor, or provoker of the incident” is actually an undercover officer).

. The online conversation started with emails through the Fling.com website and continued on the Yahoo instant messaging service.

. For example, after Davis described the types of massages that he could perform — the "a,” or adult, massage being "everything” and the "g" massage being "everything but boobs prmise land and butt” — the following discussion took place in the online chat between Davis and the undercover officer posing as the minor:
[Minor]: whatchu wanna do wit me?
[Davis]: idk deppend on wat u wana do we can chill at first and go from there
[Minor]: oh we aint looking to chill
[Davis]: well i dont want to say it on here u feel [m]e
[[Image here]]
[Davis]: thats y i wanted to finish talkin to ur sis make sure everything kool
[Davis]: thats y i call bak
[Davis]: i kno wat yall wana do and im down just got to make sure everything legit thats all
(all misspellings and phonetic words in original).

. The following discussion took place on one of the calls that Davis made to the undercover officer posing as the minor’s older sister:
[Older sister]: She [the minor] is wanting to learn some new things. What — do you do anything—
[Davis]: Well, I — well, I’ve studied on women for 13 years and like I know everything, Kama Sutra, G-Spot, hot spot, best way to do oral, best way to finger. Yeah, I used to teach ladies how to have orgasms.
[[Image here]]
[Davis]: So, like — so yeah — so I’m — I could teach her like new stuff, show you new stuff, everything.
[Older sister]: Cool.... Well, how would you feel if I just wanted to watch you two?
[Davis]: That’s straight
[Older sister]: You’re good with that?
[Davis]: Yeah.

.The trial court did not make the Brad Paisley-inspired finding attributed to it by the majority, and even if it had, there is certainly nothing “cool” about Davis’ online persona and communications in this case. Moreover, in my view, whether Davis was " 'cooler online' than in real life” has nothing to do with whether he committed the crimes in this case in an unsophisticated manner.

. But see Fureman, - So.3d at -, 39 Fla. L. Weekly D408, at n. 2. (disagreeing with Murphy “to the extent it implies that, standing alone, use of a common communication tool in the commission of a crime is competent and substantial evidence that the crime was committed in an unsophisticated matter” and expressing the view that "using a computer to commit a crime evinces a level of sophistication that would not support a downward departure sentence”).