SILBERMAN, Chief Judge.
 

 Michael Dwayne Enix appeals his convictions and sentences for attempted kidnapping, possession of cocaine, and possession of paraphernalia. Because he correctly contends that the trial court should have granted his motion for judgment of acquittal on the attempted kidnapping charge, we reverse his conviction and sentence as to that crime.
 

 Based on events occurring on or between July 4 and July 11, 2005, the State charged Enix with attempted kidnapping, solicitation to commit kidnapping, possession of cocaine, and possession of drug paraphernalia. Enix was acquitted of solicitation to commit kidnapping, and the only conviction at issue is the attempted kidnapping.
 

 At trial, the State presented evidence that George McCann, a confidential informant who had been involved in a drug trafficking organization, contacted law enforcement about Enix. McCann testified that he encountered Enix on July 4, 2005, and that he had known Enix since childhood. McCann claimed that Enix asked McCann to get involved in a plan to get “money from Publix.” Enix told McCann that there was a lot of money in the safe at Publix. Enix’s plan was to kidnap the manager’s wife and hold her for ransom. He believed that he could get a couple hundred thousand dollars from this plan. Initially, McCann did not think Enix was serious, but McCann spoke to Enix on the phone the next day, and Enix said he wanted to go through with the plan and wanted to meet with McCann.
 

 McCann contacted a law enforcement officer who put McCann in touch with Detective Harrison of the sheriffs office in Pasco County. McCann consented to having his conversations with Enix recorded. Detective Harrison provided McCann with a recording device, and McCann then went to see Enix.
 

 Driving his van that contained the recording device, McCann picked up Enix and they went to the Publix in question. Enix wanted to get the manager’s name, so he went inside, made a purchase, and found the manager’s picture and name on the wall. Enix returned to the van and told McCann that the manager’s name was Mr. Pizzo. Enix then wanted to be taken home so that he could find Pizzo’s address in the phone book or on the computer.
 

 In a later phone call, Enix said he had obtained Pizzo’s address and wanted to “scope out” the address. McCann informed Detective Harrison that Enix had an address, and Detective Harrison provided McCann with a different address to give Enix. Detective Harrison did not want the two men at the Pizzos’ actual home. McCann met with Enix again on July 11, 2005. McCann provided the bogus address, and they drove there. They did not plan on kidnapping Ms. Pizzo that day, but they did discuss further details of the plan. McCann then drove Enix to a convenience store, as Detective Harrison had directed, and Enix was arrested. An officer found a crack pipe with residue in it in Enix’s
 
 *356
 
 pocket when he was searched incident to arrest.
 

 McCann acknowledged at trial that he was in some legal trouble and had been sentenced to five years in prison. He was to begin serving his sentence on July 15, 2005. Enix was aware that McCann was going into custody. McCann was cross-examined extensively regarding his motives for assisting law enforcement, such as whether he hoped to further reduce his prison sentence and whether he desired to get back at Enix for stealing money. McCann denied manipulating Enix and denied calling him ten to fifteen times a day to meet with him.
 

 McCann never saw Enix with any of the things that might be needed to execute the kidnapping plan, such as a hood, a mask, tape, a cell phone, or a gun. McCann was asked why Enix agreed to go to the bogus address that the police had provided to McCann. McCann replied that Enix was not exactly sure the address he had found for Pizzo was correct.
 

 Tapes of two conversations between Enix and McCann were played for the jury. In the first conversation Enix said McCann had to figure out a place “we” can take her where there would be “nobody around.” Enix also said that because the bank bag comes in to Publix on Wednesdays, “we want to do it on Tuesday.” Enix mentioned he was thinking of taking her somewhere on Dixie Highway. In the second conversation the two men discussed possibly going into the back of Publix, before a Brinks truck would arrive, to get money. The conversation suggests that they were perhaps considering a heist from the Publix rather than a kidnapping.
 

 Grace Pizzo testified that in July 2005 she was married to the store manager of the Publix in question. She had never seen Enix and knew nothing about the case until law enforcement approached her after the fact.
 

 Enix testified that McCann was the one who approached him about committing a kidnapping. Enix explained that McCann had bulked and threatened him in the past. Enix was afraid of McCann and owed him a large sum of money. Because McCann would be going to prison in a few days, Enix planned to placate McCann until then. Enix stated that he just tried to appear to be cooperating. He testified that he never intended to go through with the plan. He never purchased a gun, hood, mask, rope, or tape. He claimed that it was McCann who supplied both addresses and that they drove past one address. Enix then asked McCann to take him to the store because he needed a beer.
 

 The jury acquitted Enix of count two for solicitation to commit kidnapping and found him guilty of the remaining counts. Enix contends on appeal that the trial court erred in denying his motion for judgment of acquittal on count one for attempted kidnapping because there was insufficient evidence that Enix committed an overt act toward the completion of the kidnapping.
 

 Enix was charged with attempted kidnapping under sections 777.04(1) and 787.01(l)(a)(l), Florida Statutes (2005). This required the State to prove that Enix attempted to “forcibly, secretly, or by threat” confine, abduct, or imprison Grace Pizzo against her will and without lawful authority with the intent to hold her “for ransom or reward or as a shield or hostage.” § 787.01(l)(a)(l). The attempt statute provides that a person commits a criminal attempt if the person attempts to commit an offense “and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented” from executing the offense. § 777.04(1).
 

 
 *357
 
 In Florida, the two elements comprising an attempt to commit a crime are (1) a specific intent to commit the crime and (2) an overt act done toward its commission that is beyond mere preparation.
 
 State v. Coker,
 
 452 So.2d 1135, 1136 (Fla. 2d DCA 1984);
 
 Webber v. State,
 
 718 So.2d 258, 259 (Fla. 5th DCA 1998). In
 
 Coker
 
 this court explained the difference between preparation and an overt act as follows:
 

 Preparation generally consists of devising or arranging the means or measures necessary for the commission of the offense. The attempt is the direct movement toward the commission after preparations are completed. The act must reach far enough toward accomplishing the desired result to amount to commencement of the consummation of the crime. Some appreciable fragment of the crime must be committed and it must proceed to the point that the crime would be consummated unless interrupted by a circumstance independent of the attemptor’s will.
 

 452 So.2d at 1136 (citations omitted);
 
 see also Hudson v. State,
 
 745 So.2d 997, 1000 (Fla. 2d DCA 1999) (recognizing that in Florida the focus is generally on whether a defendant’s actions are preparatory or overt and that the determination is usually case specific).
 

 Here, the preparations for kidnapping the Publix manager’s wife were not complete. Enix did not know her name or what she looked like. At most, it could be said that Enix and McCann briefly “cased” a home, albeit the wrong one. McCann then drove Enix to a convenience store, where he was promptly arrested. No one suggested that the purpose of the trip to the convenience store was to further the plan and perhaps obtain supplies for the kidnapping. In fact, Enix was under the impression that they were going to the convenience store to get a beer. As Enix argues on appeal, they still had a sizable “to do” list which included obtaining masks, rope, tape, a hood, and a weapon. One of the taped conversations indicated that they had not decided where to take the victim, and in the other it appears that they were considering a heist from the Publix rather than a kidnapping.
 

 The evidence indicates that Enix had a half-baked scheme when he was arrested. Obtaining the manager’s name from the wall of the Publix and driving by what Enix believed to be the potential victim’s home were not overt acts that constituted some appreciable fragment of the crime being committed. Enix was in the preparatory stage and had not committed an overt act toward the completion of the kidnapping.
 

 Because the State failed to meet its burden to prove that Enix committed an attempted kidnapping, the trial court should have granted Enix’s motion for judgment of acquittal on that charge. Accordingly, we reverse Enix’s judgment and sentence for attempted kidnapping. We affirm the remaining convictions and sentences.
 

 Affirmed in part and reversed in part.
 

 NORTHCUTT and WALLACE, JJ., Concur.