COHEN, J.
 

 Appellant, Deepak Bist, challenges the denial of his motions to dismiss the charges of attempted lewd and lascivious battery, and computer pornography and child exploitation. We affirm, concluding that Appellant’s due process rights were not violated and the facts sufficed to establish a prima facie case of attempted lewd and lascivious battery.
 

 This case began when the Flagler Beach Police Department (“FBPD”) sought out the services of Perverted Justice, an online watchdog group that seeks to expose pedophiles. To accomplish this goal, Perverted Justice enlists the help of approximately 250 unpaid volunteers, some of whom enter online chat rooms as “decoys” with underage profiles. The decoys wait for adults within the chat rooms to contact them and solicit sexual activity. Other volunteers, also posing as minors, speak with suspects on the telephone to verify their identities. Perverted Justice electronically records and stores the chat logs and telephone conversations, then notifies the police of suspects and their alleged offenses. Once a suspect requests a meeting with a decoy for sexual activity, the decoy directs the suspect to a location where the suspect is apprehended by law enforcement.
 

 With the consent of FBPD, Perverted Justice coordinated a sting operation at a home in Flagler Beach. The National Broadcasting Company (“NBC”) had arranged with Perverted Justice to film the stings for its “To Catch a Predator” series, featured on its “Dateline” television program. In return, NBC agreed to pay Perverted Justice $75,000 per hour of programming that resulted from the sting operation.
 
 [1]
 
 Perverted Justice ultimately received $150,000 and used the proceeds to pay its expenses. FBPD was aware that NBC would be filming the stings, but did not receive any compensation from NBC or pay Perverted Justice for its services.
 

 Bist initiated an online conversation with “Jennah,” whom he believed to be a thirteen-year-old girl from Flagler Beach. In fact, “Jennah” was a Perverted Justice decoy. Between November 26, 2006, and
 
 *939
 
 December 9, 2006, Bist engaged in explicit, sexual conversations with “Jennah” and arranged to meet at “her house” to engage in sexual activity. Perverted Justice notified FBPD of Bist’s conversations and his intent to meet “Jennah” at the sting house.
 

 Bist traveled from his home in West Palm Beach to Flagler Beach bearing flowers and chocolate. FBPD officers, waiting outside, monitored Bist with numerous cameras and microphones as he entered the sting house. Confronted by Chris Hansen, the television host of “To Catch a Predator,” Bist realized there would be no tryst with a young girl and exited, whereupon he was arrested by FBPD. A search of Bist’s car resulted in the seizure of lubricant and condoms. Bist was charged with attempted lewd and lascivious battery, as well as computer pornography and child exploitation. He subsequently filed motions to dismiss, arguing that FBPD’s conduct was so egregious that his due process rights were violated. This defense is also referred to as objective entrapment. Additionally, Bist claimed the undisputed facts did not constitute the commission of attempted lewd and lascivious battery. After the trial court denied relief, Bist pled no contest, reserving his right to appeal the trial court’s dispositive ruling. We review
 
 de novo
 
 a trial court’s order on a motion to dismiss.
 
 State v. Perkins,
 
 977 So.2d 643, 644 (Fla. 5th DCA 2008).
 

 The defense of outrageous government conduct or objective entrapment is evaluated under the due process provision of Article I, section 9, of the Florida Constitution.
 
 Munoz v. State,
 
 629 So.2d 90, 98 (Fla.1993). It requires reviewing the totality of the circumstances “ ‘in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses.’ ”
 
 Rochin v. California,
 
 342 U.S. 165, 169, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (quoting
 
 Malinski v. New York,
 
 324 U.S. 401, 416-17, 65 S.Ct. 781, 89 L.Ed. 1029 (U.S.1945)). Due process is violated when “ ‘the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.’ ”
 
 Tercero v. State,
 
 963 So.2d 878, 883 (Fla. 4th DCA 2007) (quoting
 
 State v. Glosson,
 
 462 So.2d 1082, 1084 (Fla.1985)). It is a balancing test; the court must weigh the rights of the defendant against the government’s need to combat crime.
 
 McDonald v. State,
 
 742 So.2d 830, 831 (Fla. 4th DCA 1999).
 

 Law enforcement is given no guidance except what is provided in case law. The difficulty in defining these limits was recognized by the supreme court in
 
 State v. Williams,
 
 623 So.2d 462, 465 (Fla.1993). The court noted, “ ‘due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.’”
 
 Id.
 
 (quoting
 
 Joint Anti-Fascist Refugee Comm. v. McGrath,
 
 341 U.S. 123, 162, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)).
 

 In this case, Bist asserts two arguments in support of his due process claim. First, he argues Perverted Justice’s contingent fee arrangement with NBC created a financial incentive to entrap as many people as possible in violation of
 
 Glosson.
 
 Second, Bist contends FBPD “took an unconstitutional shortcut” by allowing Perverted Justice to perform all the investigative work without supervising or monitoring its conversations with Bist. Underlying both of Bist’s arguments is the premise that Perverted Justice was an agent of FBPD by virtue of FBPD “engaging” its services. Assuming, without deciding, this premise
 
 *940
 
 is valid, Bist’s arguments do not demonstrate a due process violation.
 

 Cases finding a due process violation based on outrageous government conduct have one common thread: affirmative and unacceptable conduct by law enforcement or its agent. In
 
 Glosson,
 
 462 So.2d at 1082, a sheriffs department employed an informant to conduct a reverse-sting drug operation. As consideration, the informant was promised ten percent of the proceeds from any civil forfeitures arising out of a successful prosecution.
 
 Id.
 
 at 1083. The informant’s testimony and cooperation were necessary for a successful prosecution.
 
 Id.
 
 at 1085. Because of the “enormous financial incentive not only to make criminal cases, but also to color his testimony or even commit perjury in pursuit of the contingent fee,” the supreme court found a due process violation.
 
 Id.
 
 The supreme court further stated, “[t]he due process rights of all citizens require us to forbid criminal prosecutions based upon the testimony of vital state witnesses who have what amounts to a financial stake in criminal convictions.”
 
 Id.
 

 In
 
 Williams,
 
 623 So.2d at 463, the defendant was arrested during a reverse sting operation by the Broward County Sheriffs Office for purchasing crack cocaine within 1,000 feet of a school. The supreme court reversed the defendant’s conviction, finding a due process violation where the Sheriffs Office illegally manufactured the crack cocaine.
 
 Id.
 
 at 467;
 
 see also Farley v. State,
 
 848 So.2d 393, 398 (Fla. 4th DCA 2003) (holding that law enforcement’s manufacture of child pornography as part of an email solicitation, coupled with promises of protection from government interference, was a violation of due process). Similarly, in
 
 Madera v. State,
 
 943 So.2d 960, 962 (Fla. 4th DCA 2006), the defendant’s due process rights were violated when the informant pretended to be romantically interested in the defendant and induced him to purchase drugs with promises of sex and pleas that she needed the drugs to cope with cancer.
 

 This case is materially distinguishable from the cases cited above. Here, we do not have a situation where law enforcement incentivized, induced, or otherwise manufactured the instrumentalities for the crime to occur. Rather, Perverted Justice’s volunteers simply entered online chat rooms and waited for someone to solicit sexual activity from a person believed to be a minor. Perverted Justice created nothing more than an opportunity. This is not prohibited.
 
 State v. Dickinson,
 
 370 So.2d 762, 763 (Fla.1979). Law enforcement may provide the facilities necessary to carry out the crime, and the mere use of deceit does not violate due process.
 
 Id.
 
 (quoting
 
 U.S. v. Russell,
 
 411 U.S. 423, 435-36, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)).
 

 Although Perverted Justice had a contingency fee arrangement with NBC, Bist was not solicited, induced, or otherwise lured into seeking a sexual liaison with a Perverted Justice decoy. The undisputed facts show that Bist, on his own initiative, contacted “Jennah” and set up a meeting intending to engage in sexual activity with a thirteen-year-old girl. Any concern that Perverted Justice had an incentive to manufacture crime or commit perjury is alleviated by the fact that every conversation between Bist and the decoy was electronically recorded and stored. There is absolutely no suggestion that Bist did not voluntarily engage in the conversations or that the transcribed contents are anything but accurate.
 

 Further, the mere failure to supervise or monitor Perverted Justice does not violate due process.
 
 See State v. Lopez,
 
 908 So.2d 484, 485 (Fla. 4th DCA 2005)
 
 *941
 
 (holding that “failure to properly supervise the confidential informant, standing alone, did not amount to a due process violation”);
 
 State v. Figuereo,
 
 761 So.2d 1252, 1255 (Fla. 3d DCA 2000) (same). It is a lack of supervision resulting in unscrupulous conduct by an informant which gives rise to due process concerns. There is no suggestion of impropriety by Perverted Justice, and the recording and storage of all communications between Bist and the decoy insured the integrity of the investigation. Based on the foregoing, we do not find the methods employed by law enforcement so outrageous that due process considerations would bar prosecution.
 

 Bist also contends that his charge of attempted lewd and lascivious battery should have been dismissed because his arrival at the sting house was not an overt act. A motion to dismiss should only be granted where the most favorable construction to the State could not establish a prima facie case of guilt.
 
 State v. Taylor,
 
 16 So.3d 997, 999 (Fla. 5th DCA 2009). The facts, viewed in the light most favorable to the State, are sufficient to justify the denial of Bist’s motion to dismiss.
 

 Criminal attempt requires three elements: the intent to commit a crime, an overt act towards its commission, and failure to successfully complete the crime.
 
 Morehead v. State,
 
 556 So.2d 523, 524 (Fla. 5th DCA 1990). An overt act is one that manifests the pursuance of a criminal intent, going beyond mere preparation to the actual commencement of the crime.
 
 Id.
 
 at 524-25. Drawing the distinction between a preparatory act and an overt act is often difficult and depends on the facts of each case.
 
 [2]
 

 Hudson v. State,
 
 745 So.2d 997, 1000 (Fla. 2d DCA 1999).
 

 In
 
 Wiggins v. State,
 
 816 So.2d 745, 747 (Fla. 4th DCA 2002), the court held that Wiggins committed an overt act towards the commission of a lewd and lascivious act when he handed a fourteen-year-old girl ten dollars and a letter that expressed his desire to engage in sexual activity and detailed where and when they could engage in such activity. In
 
 Hudson,
 
 745 So.2d at 999, a detective, posing as a fourteen-year-old boy, responded to Hudson’s personal advertisement in a pornographic magazine and began exchanging letters with him. In Hudson’s letters to the boy, he described various sexual acts he wished to engage in and encouraged the boy to come live with him.
 
 Id.
 
 The court ruled that mailing the fictitious boy a plane ticket and arranging for his transportation to Hudson’s house “from such a distance, even without bringing the boy into the house, constituted an overt act sufficient to support the crime of attempted lewd and lascivious.”
 
 Id.
 
 at 1000.
 

 In the instant case, Bist prepared to, and took significant steps towards consummating his desire to have sex with a thirteen-year-old.
 
 [3]
 
 He conducted sexually explicit online conversations and arranged to meet the girl at her home to engage in sexual activity. Beyond these preparatory
 
 *942
 
 acts, Bist drove over 200 miles from his home in West Palm Beach to the decoy home in Flagler Beach. He arrived at the prearranged time with flowers, chocolates, lubricant, and condoms. Not only did Bist travel a substantial distance in pursuance of his criminal intent, but he also brought with him items to facilitate his criminal intent and physically entered the decoy home.
 
 See Hudson,
 
 745 So.2d 997. These facts, viewed in the light most favorable to the State, are sufficient to prove a prima facie case of attempted lewd and lascivious battery. Accordingly, we affirm.
 

 AFFIRMED.
 

 SAWAYA, and LAWSON, JJ., concur.
 

 [1]
 

 . Prior to the Flagler Beach sting, Perverted Justice conducted similar stings without compensation, both with and without NBC, for other law enforcement agencies.
 

 [2]
 

 . In cases of child molestation, courts have suggested that slight progression towards the consummation of the crime is sufficient for an overt act.
 
 See Hudson v. State,
 
 745 So.2d 997, 1000 (Fla. 2d DCA 1999).
 

 [3]
 

 . While we question the result reached in
 
 State v. Duke,
 
 709 So.2d 580 (Fla. 5th DCA 1998), we find this case distinguishable. The issue in
 
 Duke
 
 involved the sufficiency of the evidence for the charge of attempted sexual battery. Unlike
 
 Duke,
 
 this case involves an appeal of a motion to dismiss following a plea of
 
 nolo contendere
 
 to the charge of attempted lewd and lascivious battery. In addition, we find the determination of an overt act to be case specific, and here, Appellant took additional steps toward the consummation of the crime.