MARSTILLER, J.
The State charged Thomas Murphy with using a computer service to solicit a person believed to be the parent of a child to engage in unlawful sexual conduct with a person believed to be the child, and with thereafter traveling for the purpose of engaging in unlawful sexual conduct with a person believed to be a minor. See § 847.0135(3)(b), (4)(b), Fla. Stat. (2011). The charges arose after Murphy answered an advertisement posted on the Internet site www.craigslist.org (“craigslist”), and arranged to have sex with a 14-year-old girl. The advertisement was placed by a law enforcement officer posing as the girl’s father. A jury found Murphy guilty of both felonies. Departing downward from the 42-month prison sentence indicated on Murphy’s sentencing score sheet, the trial court withheld adjudication and placed Murphy on concurrent terms of nine months in jail, followed by five years’ sex-offender probation.[1]
Seeking reversal of the verdicts and sentences, Murphy argues that: (1) he was entitled to judgment of acquittal because the State presented no evidence establishing he had solicited a person believed to be the parent of a child; (2) law enforcement’s undercover operation constituted objective entrapment; and (3) separate punishments for using a computer service to solicit sex with a minor and traveling to meet a minor after using a computer service to solicit sex violate double jeopardy principles. The State cross-appeals the downward departure sentence, arguing there was no competent, substantial evidence supporting the mitigating factors the trial court relied on to depart from the minimum 42-month prison term yielded by Murphy’s sentencing score sheet, and that the trial court abused its discretion in departing from the minimum sentence. For the reasons explained below, we affirm on all issues.

A. Murphy’s Appeal

1. Motion for judgment of acquittal

The provisions of section 847.0135, Florida Statutes (2011), under which the State charged and prosecuted Murphy, state in pertinent part:
(3) CERTAIN USES OF COMPUTER SERVICES OR DEVICES PROHIBITED. — Any person who knowingly uses a computer online service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to:
[[Image here]]
(b) Solicit, lure, or entice, or attempt to solicit, lure, or entice a parent, legal guardian, or custodian of a child or a person believed to be a parent, legal guardian, or custodian of a child to consent to the participation of such child in any act described in chapter 794, chapter 800, or chapter 827, or to otherwise engage in any sexual conduct, commits a felony of the third degree[.]
[[Image here]]
(4) TRAVELING TO MEET A MINOR. — Any person who travels any distance either within this state, to this state, or from this state ... for the purpose of engaging in any illegal act described in chapter 794, chapter 800, or chapter 827, or to otherwise engage in other unlawful sexual conduct with a child or with another person believed by the person to be a child after using a *327 computer online service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to:
[[Image here]]
(b) Solicit, lure, or entice, or attempt to solicit, lure, or entice a parent, legal guardian, or custodian of a child or a person believed to be a parent, legal guardian, or custodian of a child to consent to the participation of such child in any act described in chapter 794, chapter 800, or chapter 827, or to otherwise engage in any sexual conduct, commits a felony of the second degree[.]
Murphy asserts that the trial court erred by denying his motion for judgment of acquittal because the State’s evidence failed to establish he solicited, lured, or enticed someone believed to be a parent to consent to his having sex with the person’s child.
“In reviewing a motion for judgment of acquittal, a de novo standard of review applies. Generally, an appellate court will not reverse a conviction that is supported by competent, substantial evidence. There is sufficient evidence to sustain a conviction if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt.” Johnston v. State, 863 So.2d 271, 283 (Fla.2003) (citations omitted).
At Murphy’s trial, the State put on evidence showing that the Tallahassee Police Department participated with the Internet Crimes Against Children Task Force in conducting an online undercover operation intended to discover and apprehend people seeking to sexually exploit children. Officer Russell Huston placed an advertisement on craigslist with the tagline, “Need a discreet male for young female — w4m (NE TLH).” The body of the ad read, “Contact me with a face pic and I will provide details. Be serious and discreet!” and included an email address.
Murphy, as well as others, responded to the ad. The State’s evidence included the following email conversation between Murphy and Officer Huston, which occurred over the course of approximately five hours:
MURPHY: Hey there just seeing if you were still looking for a guy to meet up with if so hit me back.
HUSTON: Hey man... .she likes your pic... full disclosure... Im her dad.she is 14, almost 15. older looking for her age. She had a bad first experience and looking for an older, patient experienced guy to show her how it should really be. I’m ju[s]t here to make sure some serial killer doesn’t come over. Let me know if you’re still interested and tell me about yourself.
MURPHY: This has to be spam there’s no way this is real. If your real can I see a pic?
HUSTON: its real and we need to talk a bit before i send you my 14 year old daughters pic
MURPHY: Wow Ok well what do you need to know?
HUSTON: If you’re Ok with her age, tell me about yourself. Id also like to show her your face pic to see if she is interested.
MURPHY: Well I’m 22 im a massage therapist im really down to earth and chill. I love music and I love the outdoors.
HUSTON: do you have a plan about what you want to show her?
MURPHY: Not really just make sure she has a good time and not take advantage of her. I mean what did you have in mind for her?
*328 HUSTON: totally up to whoever comes over... .but i need someone who knows what they want..if thats not ■ you.. .no hard feelings
MURPHY: I mean I was goin to-make love to her and show her all guys aren’t pieces of shit really I. mean that’s what you want to show her right I just don’t want to overstep my bounds ya know
HUSTON: well i think she would be ok with that.. .would you take any steps not to hurt her? she might be a little small for you
MURPHY: Of course I’m not trying to tear her up lol
HUSTON: and would you bring protection? last thing need is for her to get pregnant and DCF finding out?
MURPHY: Of course I’m not lookin to have a kid either.
HUSTON: Ok great.. .can i show her your face pic?
MURPHY: Yea of course. U still have it right.
HUSTON: yeah.. .just wanted ur permission. .... are you up for this tonight? we are still up
MURPHY: Yea that’s fine
In the remaining exchanges, the men arranged for Murphy’s arrival at the agreed-upon location where he would have sex with the 14-year-old girl.
Murphy argues that this evidence fails to show solicitation, luring, or enticement on his part in order to obtain the father’s consent. Rather, he argues, the evidence establishes that the father offered the teenage daughter for sex, and that he accepted the offer; he did not need to further obtain consent. Considering the evidence de novo, in the light most favorable to the State, we conclude the above-quoted email communication was sufficient for the jury to find Murphy solicited, lured, or enticed the father into letting him have sex with the 14-year~old girl. The email messages between the men reflect Murphy’s efforts to satisfy the father’s concerns and requirements for a “patient experienced guy” — demonstrating himself to be the right man for the job — in order to obtain the father’s consent.
Murphy relies on Randall v. State, 919 So.2d 695 (Fla. 4th DCA 2006), and Stumpf v. State, 677 So.2d 1298 (Fla. 5th DCA 1996), to argue that merely describing what he intended to do to the girl did not constitute solicitation. Those cases involved defendants charged with soliciting a minor to commit a lewd or lascivious act. See § 800.04(6), Fla. Stat. The court in Randall held that the defendant’s statement to a minor saying he “wanted” to lick her vagina did not, as a matter of law, constitute soliciting the minor to commit an unlawful act. Randall, 919 So.2d at 697. Similarly, the court in Stumpf held the defendant’s statement to a minor that he intended to perform oral sex on the child was a threat to make the child a victim of a crime, but was not solicitation. Stumpf, 677 So.2d at 1298.
We find Randall and Stumpf inapposite. Murphy did not simply describe what he intended to do, as did the defendants in those cases. He also described himself (“Well I’m 22 im a massage therapist im really down to earth and chill. I love music and I love the outdoors.”), and responded to the father’s concerns (“not take advantage of her”; “show her all guys aren’t pieces of shit”; “not trying to tear her up”; “not trying to have a kid either”), soliciting the father’s consent and trying to close the deal. Moreover, the statutory provisions under which Murphy was charged proscribe “soliciting], lur[ing], or entic[ing] a parent ... of a child or a person believed to be a parent ... to consent to” the child’s participation *329 in prohibited sexual conduct. Even if we agreed with Murphy that his statements did not rise to the level of solicitation, they decidedly constituted luring or enticing the father into allowing his 14-year-old daughter to participate in unlawful sexual activity. Finding the State’s evidence sufficient to sustain Murphy’s convictions, we affirm the trial court’s denial of Murphy’s motion for judgment of acquittal.

2. Objective entrapment

Florida recognizes two theories of defense based on entrapment: subjective entrapment, codified in section 777.201, Florida Statutes, and objective entrapment, definitively established in Munoz v. State, 629 So.2d 90, 99 (Fla.1993). Subjective entrapment focuses on whether conduct by law enforcement induced, encouraged, or caused the defendant to commit a crime when he or she was not predisposed to do so. See § 777.201, Fla. Stat.; Jones v. State, 114 So.3d 1123, 1126 (Fla. 1st DCA 2013). Objective entrapment occurs when egregious law enforcement conduct amounts to a violation of the defendant’s right to due process under article I, section 9, of the Florida Constitution. See Munoz, 629 So.2d at 99; Gennette v. State, No. 1D12-3407, slip op. at 9 n. 5,124 So.3d 273, 2013 WL 4873490 (Fla. 1st DCA Sept. 13, 2013) (describing objective entrapment as “government action [ ] so egregious that even a predisposed defendant’s due process rights are violated”).
Murphy’s claim of objective entrapment is not directed specifically to the undercover investigative technique law enforcement employed here, in which Officer Huston placed an advertisement in a section of craigslist akin to the “Personals” in a newspaper, and pretended to be the father of a teenage girl looking for a man to have sex with her. Rather, Murphy challenges, on general principle, law enforcement’s use of sex — i.e., creating the possibility of a sexual encounter — as a lure. He argues that doing so preys on (what he describes as) the most sensitive of human frailties — the primal urge for sex — and preys on sensitive human emotions. Such law enforcement activity is egregious, he argues, and constitutes objective entrapment.
“[DJefining the limits of due process is difficult because due process is not a technical, fixed concept; rather, it is a general principle of law that prohibits prosecutions brought about by methods offending one’s sense of justice.” Munoz, 629 So.2d at 98. The Fifth District has provided a helpful guide for assessing objective entrapment claims:
The defense of outrageous government conduct or objective entrapment ... requires reviewing the totality of the circumstances “ ‘in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses.’ ” Rochin v. California, 342 U.S. 165, 169, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (quoting Malinski v. New York, 324 U.S. 401, 416-17, 65 S.Ct. 781, 89 L.Ed. 1029 (U.S.1945)). Due process is violated when “ ‘the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.’ ” Tercero v. State, 963 So.2d 878, 883 (Fla. 4th DCA 2007) (quoting State v. Glosson, 462 So.2d 1082, 1084 (Fla.1985)). It is a balancing test; the court must weigh the rights of the defendant against the government’s need to combat crime. McDonald v. State, 742 So.2d 830, 831 (Fla. 4th DCA 1999).
*330 Bist v. State, 35 So.3d 936, 939 (Fla. 5th DCA 2010) (emphasis added).[2]
Law enforcement’s use of sex to advance an investigation has been held so egregious as to constitute a violation of due process, where the defendant was lured into criminal activity after the undercover government agent purposely established a sexual relationship with the defendant. See, e.g., Madera v. State, 943 So.2d 960, 962 (Fla. 4th DCA 2006); Curry v. State, 876 So.2d 29, 31 (Fla. 4th DCA 2004). But that sort of “preying” on human frailties and emotions is not present in the instant case. Here, law enforcement was specifically targeting child sex predators, and we see nothing egregious or outrageous in undercover online investigations, like the one conducted here, designed to apprehend people bent on engaging in sexual activity with minors. To hold otherwise would be to tie the hands of law enforcement in combating this type of sex-related crime. Murphy has presented us no appellate court decision, or other persuasive authority, indicating that the government conduct at issue here offends any societal canons of decency and fairness. Accordingly, we reject his claim of objective entrapment.

3. Double Jeopardy

 “ ‘The most familiar concept of the term “double jeopardy” is that the Constitution prohibits subjecting a person to multiple prosecutions, convictions and punishments for the same criminal offense.’ ” Partch v. State, 43 So.3d 758, 759 (Fla. 1st DCA 2010) (quoting Valdes v. State, 3 So.3d 1067, 1069 (Fla.2009)); see also Amend. V, U.S. Const.; Art. 1, § 9, Fla. Const. Murphy contends that double jeopardy principles prohibit his being punished both for soliciting a person believed to be a parent to consent to unlawful sexual activity with a child and for traveling to meet the minor after soliciting the person believed to be a parent. This is so, he posits, because the offenses occurred within the same criminal episode, the acts punished do not constitute distinct criminal acts, and the elements of the solicitation offense are subsumed within the traveling offense.
We find no double jeopardy violation here because the Legislature expressly intended to punish both acts. “[Tjhere is no constitutional prohibition against multiple punishments ‘if the Legislature intended separate convictions and sentences for a defendant’s single criminal act[.]’” Harris v. State, 111 So.3d 922, 924 (Fla. 1st DCA 2013) (quoting Hayes, 803 So.2d at 699). The crime of using the Internet to solicit a person believed to be a parent to consent to a child’s participation in unlawful sexual activity is defined in section 847.0135(3)(b), and is designated a third degree felony. The crime of traveling to meet a minor after using the Internet to solicit a person believed to be parent, as described above, is separately established and defined in section 847.134(4)(b), and is designated a second degree felony. In light of clear legislative intent to punish solicitation and traveling after solicitation separately, we conclude *331 Murphy’s sentences for the two crimes do not violate double jeopardy.[3]

B. The State’s Cross-Appeal

The State appeals the sentences imposed by the trial court — withheld adjudications and concurrent terms of nine months in jail, followed by five years’ sex offender probation — which represent a significant downward departure from the 42-month lowest permissible prison sentence yielded by Murphy’s sentencing score sheet. Seeking remand for resentencing, the State argues there was no competent, substantial evidence supporting the mitigating factors the trial court relied on to depart from the score sheet sentence. The State further contends that, even if the evidence does support the trial court’s findings, the court nonetheless abused its discretion in departing so substantially from the minimum score sheet sentence.
Section 921.0026, Florida Statutes (2011), prohibits a downward departure from the lowest permissible sentence, unless the court finds mitigating circumstances or factors that reasonably justify such departure. The statute lists several factors a court may consider, including the two the trial court relied on in this case: that the victim was an initiator, willing participant, aggressor, or provoker of the incident; and that the offense was committed in an unsophisticated manner, and was an isolated incident for which the defendant has shown remorse. See § 921.0026(2)®, (j), Fla. Stat. (2011). The trial court’s decision to impose a downward departure sentence involves two steps, each of which is subject to appellate review. The first step involves determining if there are valid grounds to depart, and this decision “will be sustained on review if the court applied the right rule of law and if competent substantial evidence supports its -ruling.” Banks v. State, 732 So.2d 1065, 1067 (Fla.1999). The second step involves determining whether to depart — a decision that takes into account the totality of circumstances, and is reviewed for abuse of discretion. Id. at 1068.
We conclude the first factor the trial court relied on for departure is not valid. “That the undercover officer was an initiator, willing participant, aggressor, or provoker of the incident is not a proper ground in this case for downward departure pursuant to section 921.0026(2)®, Florida Statutes.” State v. Holsey, 908 So.2d 1159, 1161 (Fla. 1st DCA 2005); see also State v. Grant, 912 So.2d 321, 322 (Fla. 2d DCA 2004) (holding that undercover officer involved in sting operation was not victim of defendant’s drug offense as to support downward departure factor in section 921.0026(2)®).
However, there is competent, substantial evidence in the record to support the departure factor in section 921.0026(2)(j). For this factor, there are three elements: 1) the crime is committed in unsophisticated manner, 2) it was an isolated incident, and 3) the defendant has shown remorse. See State v. Adkison, 56 So.3d 880, 883 (Fla. 1st DCA 2011). The State specifically challenges the trial court’s finding that Murphy’s crimes were committed in an unsophisticated manner. “[A] crime is committed in an unsophisticated manner when the acts constituting the crime are ‘artless, simple and not refined.’ ” State v. Walters, 12 So.3d 298, *332 301 (Fla. 3d DCA 2009) (quoting Staffney v. State, 826 So.2d 509, 512-13 (Fla. 4th DCA 2002)) (emphasis in original). Here, Murphy used his mobile phone to access craigslist online, answer an ad posted on the web site, and communicate by email with Officer Huston. It was reasonable for the trial court to conclude that such communication tools and modes are so ubiquitous today as to no longer require any level of sophistication to use them.
Having determined there is evi-dentiary support for one mitigating factor under section 921.0026(2), we consider whether the trial court abused its discretion in imposing the downward departure sentence. Although we may disagree with the degree of leniency in the sentence imposed, we cannot say with certainty that “no reasonable person would agree with the trial court’s decision” to impose a downward departure sentence at all. Banks, 732 So.2d at 1068. The record demonstrates that the court considered all the circumstances in the case, including not only the mitigating circumstances in section 921.0026(2), but also that Murphy was 22 years of age at the time of the offenses and had no prior adult criminal record, and the court fully explicated its reasons for showing leniency in sentencing. Because reasonable minds could differ on whether the court should have departed from the minimum prison term, there is no abuse of discretion. Accordingly, we affirm Murphy’s sentences.
AFFIRMED.
LEWIS, C.J., and OSTERHAUS, J., concur.

. Murphy also was charged with, and pled no contest to, possession of marijuana and possession of drug paraphernalia. See §§ 893.13(6)(b) and 893.147(1), Fla. Stat. (2011). For these misdemeanors, the trial court adjudicated Murphy guilty and sentenced him to 176 days in jail.

. Bist involved an undercover operation using adults to pose as minors in online chat rooms, and wait for adults to solicit them for sexual activity. The solicitors were arrested upon arriving at a pre-arranged location where they expected to meet the minors. Bist, 35 So.3d at 938. The investigations and arrests were televised nationally on the NBC network program, ''Dateline.” id. Unlike the broad policy argument Murphy advances here, the objective entrapment claim raised in Bist went to specific law enforcement actions; i.e., the adult decoys were not law enforcement officers, but were members of an organization called Perverted Justice, which had a contingent fee arrangement with NBC. The Fifth District found no outrageous conduct by law enforcement. Id. at 940-41.

. Having so concluded, we need not proceed further to conduct the analysis set forth in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and codified in section 775.021(4), Florida Statutes. See Gordon v. State, 780 So.2d 17, 19-20 (Fla.2001) (stating Blockburger "same elements” test is used "[a]bsent a clear legislative intent to authorize separate punishments for two crimes”).