IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

December 3, 2014

STEPHEN MIZNER,                    )
                                   )
        Appellant,                 )
                                   )
v.                                 )        Case No. 2D13-1917
                                   )
STATE OF FLORIDA,                  )
                                   )
        Appellee.                  )
_____)

BY ORDER OF THE COURT:

        Upon the court's own motion,

        IT IS ORDERED that the opinion dated July 30, 2014, is withdrawn, and the

attached opinion is substituted therefore.

I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.

JAMES BIRKHOLD, CLERK

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT OPINION

STEPHEN MIZNER,                      )
                                     )
          Appellant,                 )
                                     )
v.                                   )     Case No:  2D13-1917
                                     )
STATE OF FLORIDA,                    )
                                     )
          Appellee.                  )
                                     )
_____)

Opinion filed December 3, 2014.

Appeal from the Circuit Court for Sarasota
County; Donna Padar Berlin, Judge.

Howard L. Dimmig, II, Public Defender and
Stephen M. Grogoza, Special Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Brandon R. Christian,
Assistant Attorney General, Tampa, for
Appellee.


WALLACE, Judge.

          On its own motion, the court withdraws its opinion of July 30, 2014, and

substitutes the following opinion in its place.  The opinion is unchanged substantively

except that we substitute the following language for the last two sentences of our

original opinion:  We affirm the judgment imposed with regard to Count 2, traveling to

meet a minor, and we vacate Mr. Mizner's sentence for Count 2.  Because Mr. Mizner's

conviction for attempt to commit sexual battery by a person eighteen years of age or older upon a child less than twelve years of age was the primary offense on Mr. Mizner's scoresheet, he is entitled to resentencing with a corrected scoresheet on his remaining conviction for traveling to meet a minor. See Vroom v. State, 48 So. 3d 82, 84 (Fla. 2d DCA 2010). We also certify conflict with Murphy.

A jury found Stephen Mizner guilty of multiple offenses arising from his entanglement in a "sexual mentor" sting operation that was initiated by law enforcement officers on the Internet. Mr. Mizner appeals his judgment and sentences, raising multiple issues. Finding merit in some of his arguments and rejecting others, we affirm in part and reverse in part.

## I. THE FACTS

On November 1, 2011, a special agent employed by the Florida Department of Law Enforcement (the FDLE Agent) was assigned to the Department's cybercrime squad operating out of the Tampa region. On that day, the FDLE Agent began an undercover online operation with the Hardee County Sheriff's Office designed "to identify individuals who may be online seeking to sexually exploit children." The FDLE Agent and the other officers set up a "sexual mentor" sting operation. In this type of operation, a law enforcement officer places an online advertisement in which the officer pretends to be an older relative—usually but not always a mother—soliciting a man to "teach" the older relative's minor relation about sex.[1]

---

[1] For examples of cases involving a "sexual mentor" sting operation, see State v. Murphy, 124 So. 3d 323 (Fla. 1st DCA 2013); United States v. Poehlman, 217 F.3d 692 (9th Cir. 2000); United States v. Gamache, 156 F.3d 1 (1st Cir. 1998); State v. Canaday, 641 N.W.2d 13 (Neb. 2002). The "sexual mentor" version of internet sting operations directed at pedophiles can be problematic because some targets of the

A fictitious, online persona known as "Cindy Hawkins"—created by the FDLE Agent—was an integral part of the undercover operation. The fictitious "Cindy" was thirty-five years old and single. She lived in Zolfo Springs with her ten-year-old daughter, "Sabrina." Like her mother, "Sabrina" was fictitious, a product of the FDLE Agent's imagination. As part of their investigation, the FDLE Agent and other law enforcement officers had established an actual "undercover residence" in Zolfo Springs to which targets of the sting operation might travel for the purpose of a sexual encounter with a minor and then be arrested.

The FDLE Agent began the sting operation on November 1 at 2:07 p.m. by placing an online advertisement in the "casual encounters" subsection of the personals section of the Sarasota Craigslist. The ad began as follows: "Single Mom Looking for Family Fun—w4m-35 (Zolfo Springs, FL)." The FDLE Agent explained at trial that "w4m" indicated that the ad was placed by a woman looking for a man. The reference to "35" denoted "Cindy's" age; "Zolfo Springs" was her place of residence. The ad continued: "I am single mom with a 10yo daughter and we are both nudists. We are seeking family fun. Must be discreet and DD. Email if interested." The FDLE Agent explained further that "DD" typically meant "disease and drug free," but that it could also mean "discreet and actually drug free." The ad was signed, "Cindy," and once again designated her location as in Zolfo Springs.

---

operation may feel pressured to agree to "teach" a child about sex in the hope of obtaining a sexual relationship with the child's older relative. See Christa M. Book, Do You Really Know Who is on the Other Side of Your Computer Screen? Stopping Internet Crimes Against Children, 14 Alb. L.J. Sci. & Tech. 749, 762, 771 (2004).

On the day that the ad appeared, Mr. Mizner had reached a low point in his life. He was forty-one years old. Mr. Mizner had previously lived and worked in another state. He had recently moved to Sarasota after the breakup of a relationship with a woman that had lasted approximately fifteen years. Although Mr. Mizner had not been married, he and his former partner had two daughters. When Mr. Mizner moved to Florida, his daughters had remained with their mother. Mr. Mizner was unable to find employment in Sarasota, and he was living at the home of a relative. In addition, Mr. Mizner did not own a vehicle, and he lacked the means for his own transportation. He had begun to drink heavily. Despite the personal problems that Mr. Mizner had experienced after his relocation to Florida, he had no prior history of pedophilia or of involvement with child pornography. In fact, he had no prior criminal history except a conviction for driving under the influence that was more than ten years old.

Fifteen minutes after the FDLE Agent placed the personal ad on Craigslist, Mr. Mizner responded as follows by e-mail: "Hello cindy . . . how are you . . . i am interested . . . i like hanging out nude." The FDLE Agent's initial reply as "Cindy" inquired about Mr. Mizner's interest in "family fun with my daughter and I." (Emphasis added.) After a few e-mail exchanges, Mr. Mizner and "Cindy" began a lengthy series of communications over a period from November 1 through November 3. At the beginning of these exchanges, "Cindy" inquired if Mr. Mizner would be willing to act as a sexual mentor for the ten-year-old "Sabrina." Although Mr. Mizner's initial expression of interest was directed to the thirty-five-year-old "Cindy," he readily agreed to her proposal that he act as a sexual mentor for "Sabrina." The FDLE Agent also arranged for a female Sarasota County Sheriff's detective (the Detective) to have two controlled

- 4 -

telephone conversations with Mr. Mizner during which the Detective played the role of "Cindy." Throughout the lengthy series of communications by various means that followed, the FDLE Agent and the Detective linked a relationship with the thirty-five-year-old "Cindy" to Mr. Mizner's willingness to accede to "Cindy's" insistence on finding a man who would teach her ten-year-old daughter about sex.

The tactical goal of the sting operation was to have the targets travel to the undercover residence in Zolfo Springs, prepared to have sexual intercourse with "Sabrina." Upon arrival, the unsuspecting targets could be arrested for various offenses, including attempted sexual battery on a minor less than twelve years of age. However, Mr. Mizner lived in Sarasota, and he did not own a vehicle. For this reason, "Cindy" agreed to drive to Sarasota and to meet Mr. Mizner at a fast food restaurant located on Clark Road in Sarasota, at an exit just off of Interstate 75. The time and date for the initial meeting were set at 10:30 a.m. on Friday, November 4. "Cindy" and Mr. Mizner were to have lunch at the restaurant and get acquainted. If all went well, "Cindy" was to drive Mr. Mizner approximately sixty miles from Clark Road in Sarasota to her home in Zolfo Springs. There, Mr. Mizner and "Cindy" would spend time together until they could pick up "Sabrina" from school. If all went well, Mr. Mizner planned to spend the weekend in Zolfo Springs with "Cindy" and "Sabrina."

Mr. Mizner was waiting at the fast food restaurant at 10:30 a.m. when the Detective, who was playing the role of "Cindy," arrived in her unmarked vehicle. Before going to the restaurant, Mr. Mizner had stopped at a convenience store and purchased a box of candy for "Sabrina" and two boxes of condoms in accordance with "Cindy's" previous instructions. Mr. Mizner got into the Detective's vehicle and requested a hug

from the Detective, whom he believed to be "Cindy." The Detective complied and hugged Mr. Mizner. At approximately 10:35 a.m., law enforcement officers stationed nearby moved in, pulled Mr. Mizner from the car, and arrested him in the restaurant's parking lot. In order that Mr. Mizner would not immediately realize that the Detective was actually a law enforcement officer playing the role of "Cindy," the officers went through the motions of placing her under arrest as well.

After Mr. Mizner was in custody, a deputy employed by the Sarasota County Sheriff's Department (the Deputy) interviewed him at the sheriff's office. At this point, Mr. Mizner did not realize that Cindy and Sabrina were fictitious persons. However, he did suspect that the Detective, whom he still believed to be "Cindy," was actually a detective operating undercover. When the Deputy inquired of Mr. Mizner concerning whether he actually intended to assist "Cindy" by having sexual intercourse with "Sabrina," he responded, "There's no way I would have been able to go through with it. No way. I have a conscience. I have daughters." Captivated by "Cindy's" convincing online and telephonic persona, Mr. Mizner said that he "wanted to go in [to the restaurant], you know, and meet her and just talk to her and, you know, get a vibe, like you would on a blind date." Mr. Mizner's post-arrest interview suggests that he was more interested in developing a relationship with the thirty-five-year-old "Cindy" than he was with her ten-year-old daughter. Unfortunately for him, Mr. Mizner's instant messages and telephone conversations with "Cindy" do not display a similar reluctance to participate in sexual behavior with "Sabrina." In fact, Mr. Mizner's communications to "Cindy" explicitly discuss proposed sexual behavior involving him, "Cindy," and "Sabrina."

- 6 -

## II. THE PROCEDURAL BACKGROUND

The State filed an information against Mr. Mizner charging him with four offenses:  Count 1, soliciting a parent to consent to sex with a minor in violation of section 847.0135(3)(b), Florida Statutes (2011), a third-degree felony; Count 2, traveling to meet a minor in violation of section 847.0135(4)(b), a second-degree felony; Count 3, unlawful use of a two-way communications device in violation of section 934.215, Florida Statutes (2011), a third-degree felony; and Count 4, attempt to commit sexual battery by a person eighteen years of age or older upon a child less than twelve years of age in violation of sections 794.011(2)(a) and 777.04(1), (4)(b), Florida Statutes (2011), a first-degree felony.  At trial, Mr. Mizner raised the defense of subjective entrapment, and the trial court instructed the jury on that defense.[2]  However, he did not raise the issue of objective entrapment in the trial court.[3]  Mr. Mizner did not take the

---

[2]Subjective entrapment occurs when

[a] law enforcement officer . . . for the purpose of obtaining evidence of the commission of a crime . . . induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.

§ 777.201(1).

[3]Objective entrapment occurs where "even a predisposed defendant's due process rights are violated."  Gennette v. State, 124 So. 3d 273, 277 n.5 (Fla. 1st DCA 2013); see also Bist v. State, 35 So. 3d 936, 939, 941 (Fla. 5th DCA 2010) (discussing the defense of outrageous government conduct or objective entrapment in the context of a sting operation directed at pedophiles); Michael W. Sheetz, CyberPredators: Police Internet Investigations Under Florida Statute 847.0135, 54 U. Miami L. Rev. 405, 431-38 (2000) (discussing the defense of objective entrapment).  "Due process is violated when the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction."  Bist, 35 So. 3d at 939 (internal quotation marks omitted).

stand in his own defense, and he did not call any witnesses on his behalf.  The jury

rejected Mr. Mizner's subjective entrapment defense and found him guilty as charged on

all four counts.

The trial court adjudged Mr. Mizner to be guilty in accordance with the

jury's verdict.  The trial court imposed sentences on Mr. Mizner as follows: Count 1, five

years in prison; Count 2, fifteen years in prison; Count 3, five years in prison; and Count

4, twenty years in prison followed by ten years of sex offender probation.  The trial court

designated the sentences to run concurrently.  Also, the trial court designated Mr.

Mizner to be a sexual predator.

### III.  MR. MIZNER'S APPELLATE ISSUES

On appeal, Mr. Mizner raises five issues.  First, he argues that the trial

court erred in denying his motion for judgment of acquittal and motion for new trial with

regard to Count 1, the soliciting offense.  Second, Mr. Mizner contends that the trial

court erred in denying his motion for judgment of acquittal on count 4, the offense of

attempted sexual battery.  Third, Mr. Mizner asserts that the trial court erred in refusing

to give the jury his special jury instruction on attempted sexual battery.  Fourth, Mr.

Mizner argues that his convictions for soliciting and unlawful use of a two-way

communications device violate double jeopardy because they are subsumed within the

other offenses and occurred during a single act.  Finally, Mr. Mizner asserts that

fundamental error exists with regard to all four of the offenses for which he was found

guilty because the conduct of the law enforcement officers at issue is so outrageous

that it constitutes objective entrapment.  We find merit in Mr. Mizner's second and fourth

arguments.  Mr. Mizner's first and fifth arguments are without merit and do not warrant

further discussion. Based on our disposition of Mr. Mizner's second argument, his third argument is moot. We turn now to a discussion of Mr. Mizner's arguments about the sufficiency of the evidence to prove the commission of attempted sexual battery and the double jeopardy issues.

## IV. DISCUSSION

### A. *Mere Preparation or Overt Act toward the Commission of Sexual Battery?*

On his second appellate issue, Mr. Mizner concedes that he appeared at the restaurant on Clark Road at the appointed time carrying a box of candy for "Sabrina" and two boxes of condoms. However, Mr. Mizner argues that his actions in this regard were preparatory only and did not amount to the overt act necessary to prove an attempt to commit a sexual battery on a minor less than twelve years of age. In order to analyze Mr. Mizner's argument on this issue, we must first review the pertinent facts.

During Mr. Mizner's initial exchange of instant messages with "Cindy" on November 1, he suggested that the parties meet at the fast food restaurant on Clark Road. "Cindy" subsequently responded to this suggestion as follows: "I like [the restaurant] you mentioned before because we could sit an [sic] talk first and get to know each other first." In a subsequent telephone conversation with Mr. Mizner, the Detective, who was playing the role of "Cindy," outlined her plan for the meeting with Mr. Mizner and subsequent events. First, Mr. Mizner and "Cindy" would have lunch at the restaurant and talk. Later, after arriving at "Cindy's" home in Zolfo Springs, they would pick up "Sabrina" from school, return home, and have dinner. Finally, "Cindy," "Sabrina," and Mr. Mizner would retire to "Cindy's" bedroom.

- 9 -

The pertinent law concerning the necessity for an overt act to prove an attempt is relatively straightforward, but it is often difficult in its application to individual cases. Section 777.04(1) defines an attempt for purposes of the criminal law as follows: "A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt." "In Florida, the two elements comprising an attempt to commit a crime are (1) a specific intent to commit the crime and (2) an overt act done toward its commission that is beyond mere preparation." Enix v. State, 69 So. 3d 354, 357 (Fla. 2d DCA 2011) (citing State v. Coker, 452 So. 2d 1135, 1136 (Fla. 2d DCA 1984)). The Coker court explained the difference between mere preparation and an overt act as follows:

> Preparation generally consists of devising or arranging the means or measures necessary for the commission of the offense. The attempt is the direct movement toward the commission after preparations are completed. The act must reach far enough toward accomplishing the desired result to amount to commencement of the consummation of the crime. Some appreciable fragment of the crime must be committed and it must proceed to the point that the crime would be consummated unless interrupted by a circumstance independent of the attempt[e]r's will. The act need not be, however, the ultimate, the last proximate, or the last possible act toward consummation of the crime.

Coker, 452 So. 2d at 1136 (citations omitted). "[T]he line between preparatory acts and overt acts is difficult to draw and tends to be case specific." Hudson v. State, 745 So. 2d 997, 1000 (Fla. 2d DCA 1999).

In reviewing the facts in this case, two reasons lead us to conclude that Mr. Mizner's conduct constituted mere preparation and not overt acts leading to the

- 10 -

commission of a sexual battery on a minor less than twelve years of age. First, the arrangements that "Cindy" made for Mr. Mizner to meet "Sabrina" were expressly conditional. According to "Cindy's" instant message, she and Mr. Mizner were to "sit an [sic] talk first and get to know each other first." If either party felt uncomfortable for any reason, he or she could just walk away. It follows that the meeting at the restaurant in Sarasota was just a preliminary step to whatever might follow. A decision by both parties to proceed further was necessary before Mr. Mizner could be introduced to "Sabrina." Under these circumstances, it cannot be said that an appreciable fragment of the crime had been committed at the restaurant and that it would proceed to the point that the crime would be completed unless interrupted by a circumstance independent of Mr. Mizner's will.

Second, when Mr. Mizner was arrested in the restaurant parking lot in Sarasota, he was approximately sixty miles and eight-to-ten hours away from the proposed sexual contact with "Sabrina." Before that event could occur, the following steps needed to happen: (1) Mr. Mizner and "Cindy" had to eat lunch at the restaurant; (2) "Cindy" had to drive Mr. Mizner to Zolfo Springs; (3) Mr. Mizner and "Cindy" had to pick up "Sabrina" from school; and (4) dinner had to be prepared, served, and eaten. It would have been impossible for Mr. Mizner to have committed a sexual battery upon "Sabrina" in Sarasota. Here, the nature of the impossibility at issue is not that "Sabrina" is a fictitious persona. Instead, to the extent that "Sabrina" is a person for the purpose of our analysis of Mr. Mizner's culpability under the law of attempts, she was attending school in another community approximately sixty miles away when the law enforcement officers placed Mr. Mizner under arrest. Thus Mr. Mizner could not have committed a

sexual battery upon "Sabrina" in Sarasota. Undeniably, at the time of his arrest in the restaurant parking lot, Mr. Mizner had not committed an act reaching far enough toward accomplishing a sexual battery to amount to the beginning of the completion of that crime. These circumstances distinguish Mr. Mizner's case from other cases where the target of the sting operation arrived at a residence or a vehicle within which he believed that the minor was waiting. In those cases, unlike this one, the target had a realistic expectation of imminent contact with the minor. See Hudson, 745 So. 2d at 1000; Carlisle v. State, 105 So. 3d 625, 626-27 (Fla. 5th DCA 2013); Bist v. State, 35 So. 3d 936, 941-42 (Fla. 5th DCA 2010).

Here, Mr. Mizner's lack of his own transportation prevented the FDLE Agent and the other law enforcement officers from achieving their tactical goal of having him drive himself to the undercover residence in Zolfo Springs. See generally Sheetz, supra at 414-15 (discussing the tactical and strategic reasons that law enforcement agencies prefer to have the target of such investigations meet the undercover officer at the officer's location). Thus they had to improvise with a meeting at a distant location and to make the arrest of Mr. Mizner in Sarasota. This hitch in their operational plan does not justify ignoring the absence of an overt act by Mr. Mizner toward the commission of a sexual battery on "Sabrina."

For these reasons, the trial court erred in denying Mr. Mizner's motion for a judgment of acquittal on count 4 of the information, attempted sexual battery on a minor less than twelve years of age. Accordingly, we reverse Mr. Mizner's judgment and sentence for attempted sexual battery and remand for his discharge on that offense.

## B. The Double Jeopardy Issues.

On his fourth appellate issue, Mr. Mizner argues that his convictions for soliciting a parent to consent to sex with minor, in violation of section 847.0135(3)(b), and unlawful use of a two-way communications device, in violation of section 934.215, violate the prohibition against double jeopardy. He argues that the elements of the offense of soliciting are subsumed within the elements of the offense of traveling to meet a minor and that his convictions for both offenses within the same criminal episode violate the prohibition against double jeopardy. Similarly, he argues that the elements of the offense of unlawful use of a two-way communications device are subsumed into the elements of the offenses of soliciting and traveling and that all of the offenses occurred during a single episode. Accordingly, his conviction for the unlawful use of a two-way communications device violates the prohibition against double jeopardy. Mr. Mizner did not raise his double jeopardy arguments in the trial court, but he may raise them for the first time on appeal because a double jeopardy violation constitutes fundamental error. Bell v. State, 122 So. 3d 958, 959 n.1 (Fla. 2d DCA 2013).

The State acknowledged in its answer brief and at oral argument that the offenses do not each contain a separate element of proof that the others do not and that the offense of solicitation is subsumed within the traveling offense and that the offense of unlawful use of a two-way communications device is subsumed within the traveling and soliciting offenses. Thus, the State acknowledged that Mr. Mizner's convictions would not withstand scrutiny under a Blockburger[4] analysis, as codified in section

---

[4]Blockburger v. United States, 284 U.S. 299 (1932).

775.021(4)(b), Florida Statutes (2011),[5] if they were committed within the same criminal episode.

Mr. Mizner's argument, and the State's concession, that the solicitation offense is subsumed within the traveling offense is consistent with this court's recent holding to that effect in <u>Shelley v. State</u>, 134 So. 3d 1138 (Fla. 2d DCA 2014), <u>review granted</u>, No. SC14-755, 2014 WL 3360176 (Fla. Jul. 1, 2014).  In addition, we agree with the parties' arguments that the offense of unlawful use of a two-way communications device in this case was subsumed within the soliciting and traveling offenses.

Section 934.215 provides, in pertinent part, that "[a]ny person who uses a two-way communications device, including, but not limited to, a portable two-way wireless communications device, to facilitate or further the commission of any felony offense commits a felony of the third degree."  The offenses of soliciting and traveling both require the use of "a computer online service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission" as an element of those offenses, and both offenses are felonies. § 847.0135(3)(b), (4)(b).

_____

[5]Section 775.021(4) provides in pertinent part as follows:
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent.  Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

- 14 -

Thus the proof of the unlawful use of a two-way communications device was subsumed within the proof of the soliciting and traveling offenses in this case.

The State argues that because the evidence at trial would support a finding that each of the offenses occurred on different days during separate episodes we should affirm Mr. Mizner's convictions. We recognized in Shelley "that convictions for both soliciting and traveling may be legally imposed in cases in which the State has charged and proven separate uses of computer devices to solicit." 134 So. 3d at 1142. However, because in Shelley the State charged only one use of computer devices to solicit based on conduct that occurred on the same day as the traveling offense, we rejected the State's argument that the evidence reflected three separate uses of computer devices such that the soliciting charge was not subsumed within the traveling charge. Id. at 1141-42.[6]

Although the offenses charged in this case spanned more than one day, the State charged single counts of soliciting, traveling, and unlawful use of a two-way communications device. And, the State charged each of the offenses over the same time period, from November 1, 2011, to November 4, 2011. Thus we reject the State's argument, as we did in Shelley, that the evidence could support convictions for each offense as occurring during a separate criminal episode. The State did not charge the offenses as occurring during separate criminal episodes; rather, it charged them as

---

[6]The Fourth and Fifth Districts reached a similar result in Hartley v. State, 129 So. 3d 486 (Fla. 4th DCA 2014), and Pinder v. State, 128 So. 3d 141 (Fla. 5th DCA 2013). In Pinder, the district court agreed with the defendant's "argument that a single violation of []section [847.0135](3)(b)[, soliciting,] would be a lesser-included offense of an offense found under subsection (4)(b), [traveling,]" but affirmed the defendant's convictions for each offense because "the information alleged, and the evidence established, more than one violation of subsection (3)(b)." 128 So. 3d at 142.

- 15 -

occurring during a single criminal episode.  See id. ("We find no legal basis to deny a double jeopardy challenge based on uncharged conduct simply because it could have been charged.")  Accordingly, we vacate Mr. Mizner's judgment and sentences for soliciting a parent to consent to sex with a minor and for unlawful use of a two-way communications device.

Finally, we note that in Shelley, we rejected the State's argument that although the soliciting offense in that case was subsumed in the traveling offense, the legislature intended to allow multiple punishments for the two crimes.  After reviewing the statutory language, we concluded in Shelley that "there is an explicit statement of the legislature's intent to authorize multiple punishments for each violation of section 847.0135(3)(b) [(soliciting)].  However, there is no explicit statement of intent to authorize multiple punishments for conduct that violates both section 847.0135(3)(b) and section 847.0135(4)(b) [(traveling)]."  Id. at 1140.  We noted that the First District had reached the opposite conclusion in State v. Murphy, 124 So. 3d 323 (Fla. 1st DCA 2013), and certified conflict with Murphy.

Here, the State summarized in its brief the First District's conclusion in Murphy as follows:  "[B]ecause these two offenses[, soliciting and traveling,] are separately established and defined and punished as separate degrees of offenses, there is no double jeopardy violation."  But the State acknowledged that the offenses of soliciting and traveling are "part of the very same statutory section" and "[t]hus, it is debatable whether the statutory scheme clearly establishes the legislature's intent to separately convict and punish a defendant for these two offenses when they are committed in the same criminal episode."

- 16 -

On the issue of legislative intent, we are bound by our decision in <u>Shelley</u>, which has been accepted for review by the Florida Supreme Court. However, as we did in <u>Shelley</u>, we certify conflict with the First District's holding in <u>Murphy</u>.

## V. CONCLUSION

For the foregoing reasons, we vacate Mr. Mizner's judgment and the sentences imposed with regard to Count 1, soliciting a parent, and Count 3, unlawful use of a two-way communications device. We reverse Mr. Mizner's judgment and sentence on Count 4, attempt to commit sexual battery. On remand, the trial court shall discharge Mr. Mizner on this offense. We affirm the judgment imposed with regard to Count 2, traveling to meet a minor, and we vacate Mr. Mizner's sentence for Count 2. Because Mr. Mizner's conviction for attempt to commit sexual battery by a person eighteen years of age or older upon a child less than twelve years of age was the primary offense on Mr. Mizner's scoresheet, he is entitled to resentencing with a corrected scoresheet on his remaining conviction for traveling to meet a minor. <u>See</u> <u>Vroom v. State</u>, 48 So. 3d 82, 84 (Fla. 2d DCA 2010). We also certify conflict with <u>Murphy</u>.

Affirmed in part; vacated in part; reversed and remanded in part; and conflict certified.


ALTENBERND and NORTHCUTT, JJ., Concur.

- 17 -